**Mark Edward REASOR,**

v.

**The STATE of Texas.**

No. 681–99.

Court of Criminal Appeals of Texas.

March 1, 2000.

Nancy B. Barohn, Dallas, for appellant.

Kevin Patrick Yeary, Asst. DA, San Antonio, Matthew Paul, State's Atty., Austin, for the State.

## *O P I N I O N*

HOLLAND, J., delivered the unanimous opinion of the Court.

Appellant was arrested for possession of a controlled substance on January 26, 1996. After the trial court denied appellant's motion to suppress evidence, he pleaded guilty to the charge against him. Appellant was sentenced to ten years confinement and a $10,000 fine. This Court granted the State's petition for discretionary review to determine: 1) whether the court of appeals erred in holding that the officer's protective sweep of appellant's residence was illegal; and 2) whether the court of appeals erred by holding that appellant's consent to search his residence was fatally tainted. We will reverse the judgment of the court of appeals.

### *Facts*

Officer Bellino received information from an informant that appellant would be in possession of cocaine and would be distributing the cocaine on January 26, 1996. Bellino, joined by three other deputies, began surveillance at appellant's house at 8:30 PM that evening. Around 9:40 PM, appellant and a companion left appellant's house, and the officers followed them. Appellant made three brief stops at three different apartment complexes and returned to his house. Bellino testified in

the motion to suppress evidence that this behavior was "common for individuals who are delivering narcotics."

When appellant got back to his house, the police officers blocked his car in the driveway and identified themselves as police officers with their weapons drawn.[1] The officers checked appellant and his companion for weapons. When Bellino approached appellant's car, he noticed a brown pouch containing a white, powdered substance laying open on the dash. The officers secured this evidence and advised appellant of his *Miranda* warnings.[2] Appellant indicated that he understood his rights and was willing to talk to the officers. Appellant's companion was permitted to leave after the police officers were assured that the companion was not involved in any illegal activity.

At this point, three officers entered appellant's house to conduct a "protective sweep" of the residence. When the officers finished, they brought appellant back into the house to interrogate him. There, while handcuffed, appellant signed the *Miranda* warning form and the consent to search form. Appellant identified the substance found in his car as cocaine, and he pointed out other controlled substances in his bedroom and living room. The police also found additional drug paraphernalia, including a triple-beam scale and a ledger containing customer's names.

The trial court denied the motion to suppress, and appellant subsequently pleaded guilty to the possession of a controlled substance. On appeal, appellant claimed that the trial court violated his federal and Texas constitutional rights because the consent to search his house was not freely and voluntarily given. Appellant also asserted that the "protective sweep" was illegal, and thus, it tainted his consent.

The court of appeals agreed with appellant. It concluded that prosecutors "made no showing that the officers had 'articulable facts' which led them to believe that there might be someone else in the residence." *Reasor v. State*, 988 S.W.2d 877, 882 (Tex.App.—San Antonio, 1999). Additionally, the court of appeals concluded that the consent to search appellant's house was not voluntary under the totality of the circumstances. *See id.* at 881. As support for that conclusion, the court cited the facts that appellant was arrested at gunpoint, that he was handcuffed at the time he gave consent, and that police had already searched his vehicle and "swept" his house. The State filed a petition for discretionary review alleging that the court of appeals erred by holding the protective sweep was illegal and by holding the appellant's consent was fatally tainted. We granted review of the State's petition.

### Analysis

In its first ground for review, the State asserts that the court of appeals erred in holding the "protective sweep" engaged in by the officers was illegal. Specifically, the State contends that the court of appeals failed to give proper deference to the trial court's findings and conclusions. As support for its argument, the State cites *Maryland v. Buie*, 494 U.S. 325, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990), and *United States v. Oguns*, 921 F.2d 442 (2d Cir. 1990).

A "protective sweep" is a "quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Buie*, 494 U.S. at 328, 110 S.Ct. 1093. In *Maryland v. Buie*, the United States Supreme Court considered whether the Fourth Amendment would permit officers to conduct a protective sweep incident to an arrest. *Id.* at 329, 110 S.Ct. 1093. The

---

1. Officer Bellino testified at the hearing on the motion to suppress that he stopped appellant at his house because "it would be safe for us and for him."

2. The police officers did not have a search or arrest warrant.

defendant in *Buie* committed an armed robbery with an accomplice, and the police placed the defendant's house under surveillance. When the officers entered defendant's house with a warrant to arrest him, they located the defendant in the basement. The officers continued to search the basement " 'in case there was someone else' down there." While in the basement, an officer found evidence linking defendant to the offense. *See id.* at 329, 110 S.Ct. 1093. The trial court denied the defendant's motion to suppress because the officers did not know if anyone was in the basement, and the defendant was charged with a serious offense. The officers had no other way to know if the defendant had accomplices hiding in the basement.

The United States Supreme Court began its analysis with the basic premise that "the Fourth Amendment bars only unreasonable searches and seizures." *Id.* at 331, 110 S.Ct. 1093. To determine whether a search is reasonable, the individual's Fourth Amendment privacy interest is balanced with the promotion of legitimate governmental interests. Under this balancing test, a search of a house is "generally not reasonable without a warrant issued on probable cause," but may nevertheless be permitted when a strong public interest exists for the search. *Id.*

The *Buie* Court concluded that the defendant had a legitimate privacy interest in the areas of his house searched after he was located. It also found, however, that the police officers had a strong interest in "taking steps to assure themselves that the house in which a suspect is being, or has just been arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack." *Id.* at 333, 110 S.Ct. 1093.[3] The Supreme Court determined that a warrant was not required when officers were, as a precautionary matter, looking *in areas from which an attack could be immediately launched. See id.* at 334, 110 S.Ct. 1093 (emphasis added).

Concluding that a protective sweep was reasonable under the Fourth Amendment, the Supreme Court set out the parameters under which a particular sweep was legal.

> The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Id.* at 337, 110 S.Ct. 1093. The sweep must not be a "full search of the premises." *Id.* at 335, 110 S.Ct. 1093. Rather, it may only extend "to a cursory inspection of those spaces where a person may be found" and may only last long enough to "dispel the reasonable suspicion of danger." *Id.* Furthermore, the protective sweep is not an automatic right police possess when making an in-home arrest. It is permitted only when "justified by a reasonable, articulable suspicion that the house is harboring a person posing a danger to those on the arrest scene." *Id.* at 336, 110 S.Ct. 1093.

This Court has never addressed the legal parameters of a protective sweep.[4] Therefore, we utilize the test ar-

---

**3.** The protective sweep is analogous to a *Terry* or *Long* frisk. *See generally Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (authorizing a police officer to "frisk" those areas of an automobile in which a weapon may be hidden or placed if the officer has a reasonable belief that the suspect is dangerous or may gain control of the weapon.); *Terry v. Ohio,* 392 U.S. 1, 24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (holding that even though a frisk of a person for weapons constitutes a personal intrusion, the frisk is reasonable when weighed against the "need for law enforcement officers to protect themselves and other prospective victims of violence in situations where they may lack probable cause for an arrest.").

**4.** This Court did previously refuse discretionary review of this issue. *See Beaver v. State,* 942 S.W.2d 626 (Tex.App.—Tyler 1996, *pet. ref'd* ).

ticulated in *Buie.* When conducting an in-home arrest, a police officer may sweep the house only if he possesses an objective-ly reasonable belief, based on specific and articulable facts, that a person in that area poses a danger to that police officer or to other people in the area. As the Supreme Court also concluded, this sweep must stay within the appropriate scope and may last long enough to "dispel the reasonable sus-picion of danger."

■ Applying this standard to the in-stant case, this Court concludes that the protective sweep in appellant's home was illegal. In the hearing on the motion to suppress, Officer Bellino did not express his belief that any third persons were in-side the appellant's home. Nor did Bellino once articulate his belief that a third per-son inside the home was attempting to jeopardize either his or the public's safety. In fact, Bellino specifically stated that he considered the appellant's driveway a safe place for both him, his fellow officers and the appellant. Since Bellino failed to ex-press a single articulable fact necessitating a protective sweep, we conclude this sweep was illegal.[5] The State's first ground for review is overruled.

In its second ground for review, the State contends that the court of appeals erred by holding that appellant's consent to search his apartment was fatally taint-ed. In the State's opinion, the evidence presented showed by clear and convincing evidence that appellant voluntarily con-sented to the search of his home. The State also asserts that the court of appeals failed to defer to the trial court's findings of fact and conclusion that the consent was voluntary.

■ Under the Fourth and Four-teenth Amendments, a search conducted without a warrant issued upon probable cause is *"per se* unreasonable ... subject only to a few specifically established and well-delineated exceptions." *Schneckloth*

*v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). One such established exception is a search con-ducted with the consent of the suspect. *See generally Davis v. United States,* 328 U.S. 582, 593, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946). For consent to be a valid excep-tion, however, that consent must be volun-tary. *See Schneckloth,* 412 U.S. at 223, 93 S.Ct. 2041.

■ In *Schneckloth v. Bustamonte,* the United States Supreme Court considered the definition of "voluntary consent" in the context of a search and seizure. *See id.* at 219, 93 S.Ct. 2041. "When the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." *Id.* at 248, 93 S.Ct. 2041. The Court noted that "vol-untariness" goes beyond the literal mean-ing of "a knowing choice." Unless a per-son is unconscious or incapacitated, all statements made could be considered "vol-untary in the sense of representing a choice of alternatives." *Id.* at 223–24, 93 S.Ct. 2041 (quoting *Culombe v. Connecti-cut,* 367 U.S. 568, 604–05, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961)). Under this view, even physically-forced consent would be voluntary because, in theory, the suspect had a choice—either consent to the search or be beaten. *See id.* On the other hand, we do not ask whether the consent would have been given "but-for" the police ac-tions or inquiries. Under this view, "virtu-ally no statement would be voluntary be-cause very few people give incriminating statements in the absence of official action of some kind." *Id.* at 224, 93 S.Ct. 2041 (quoting *Culombe,* 367 U.S. at 604–05, 81 S.Ct. 1860). Therefore, the premise of voluntariness does not mean that police

---

**5.** It is important to note that this illegal entry did not produce any additional evidence used

against appellant. Nor did the entry cause officers to discover any other participants.

are required to never question an accused in custody, but they must have limits to the measures taken during their interrogations.

"In determining whether a defendant's will was overborne in a particular case," the *Schneckloth* Court developed the standard by which consent is tested for voluntariness. Trial courts "must [assess] the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Id.* at 226, 93 S.Ct. 2041. By looking at the circumstances leading up to the search, the reaction of the accused to pressure, and any other factor deemed relevant, a trial court can determine whether the statement of consent was given voluntarily. Some relevant factors the Supreme Court has taken into consideration in past cases are: the youth of the accused, the education of the accused, the intelligence of the accused, the constitutional advice given to the accused, the length of the detention, the repetitiveness of the questioning, and the use of physical punishment. *See id.*

■ The Texas Constitution protects the people against all unreasonable seizures and searches. *See* Tex. Const. Art. I, § 9. A search made after voluntary consent is not unreasonable. *See Kolb v. State,* 532 S.W.2d 87 (Tex.Crim.App.1976). In determining whether a defendant's consent was voluntary, the State is required to prove the voluntariness of consent by clear and convincing evidence. *See State v. Ibarra,* 953 S.W.2d 242, 243 (Tex.Crim. App.1997). This Court has held that the trial court must look at the totality of the circumstances surrounding the statement of consent in order to determine whether that consent was given voluntarily. *See Lackey v. State,* 638 S.W.2d 439, 447 (Tex. Crim.App.1982).

· ■ In the instant case, this Court will consider whether the State proved that appellant's consent to search his house was voluntary by clear and convincing evidence by looking at a variety of factors. First,

we take into account, as did the court of appeals, the fact that appellant was handcuffed at the point he gave the officers consent to search his house. This factor weighs heavily against the State's assertion that appellant's consent to search his home was voluntary. Additionally, we consider that appellant was arrested at gunpoint. At the time appellant gave his consent, the guns were no longer drawn, however. Further tainting the statement of consent was the fact the police had already entered appellant's home illegally while performing the protective sweep and the fact that the officers obtained the consent to search the home after they had taken the appellant inside his home.

Several factors support the State's contention that it did prove by clear and convincing evidence appellant voluntarily consented to the search of his home. First, the protective sweep of the house did not yield any incriminating evidence. At the point appellant consented to the search of his home, the police had not yet discovered any evidence against him except for the substance seen in appellant's car in plain view. Any taint from the illegal entry was sufficiently attenuated when the police obtained appellant's consent to search his home. Second, the police had questioned appellant's companion and had let that companion leave. This fact demonstrates the reasonableness of the arresting officers. Third, appellant was given his *Miranda* warnings twice— once when he was arrested and once right before he pointed out additional evidence in his home. He had also signed both a *Miranda* warning form and a consent to search form. Furthermore, appellant was repeatedly warned that he had the right to remain silent throughout questioning, as shown by the following testimony from the hearing on the motion to suppress.

[STATE]: What did you do at that time [after the appellant's arrest] with the [appellant]?

[OFFICER BELLINO]: At that time I secured the evidence [located in the ap-

pellant's car] and then I advised him of his *Miranda* warning.

* * *

[STATE]: Now you said you read him his rights. Did he appear to understand his rights?

[OFFICER BELLINO]: Yes.

[STATE]: Did he at any time waive his rights?

[OFFICER BELLINO]: He said that he understood them and that he would be willing to talk to us.

* * *

[STATE]: Okay. Can you tell the Court what happened in—now this is the living area that you first are in; is that correct?

[OFFICER BELLINO]: That's correct.

[STATE]: And what takes place there in the living area?

[OFFICER BELLINO]: The first thing I did was—we have printed forms for Defendants to sign and witnesses to sign that have—it's a *Miranda* warning. So I reread the [appellant] the *Miranda* warning off the form. I asked him to sign it and then the companion that was with him I asked him to sign it also. So both of them signed it. And then I went through another printed form that we have. It's a consent to search form and you have to fill it in, you know, who it is that is consenting to and the location of where you are at and you describe the premises, and then [appellant] signed it and then the friend that he was with signed it also.

Bellino continued, testifying that appellant willingly told him what kind of drug was found in the car. Bellino also stated that the appellant willingly took the officers to his bedroom and living area, and appellant pointed out the location of additional narcotics. Additionally, Bellino testified that throughout the entire interview he "kept reminding [appellant that he had] the right to remain silent and the right to quit an-

swering questions." But appellant chose to continue answering questions after each warning. With the many warnings given and an appellant who comprehended those warnings, the record demonstrates that appellant understood his legal rights and chose not to assert them at that time.

Considering all of the circumstances and giving proper deference to the trial court's determination, we hold that the State proved by clear and convincing evidence that appellant consented to the police search of his home. In fact, not only did he consent, but he cooperated with the police officers and showed them the illegal narcotics hidden in his home.

### *Conclusion*

■ This Court concludes that even though the protective sweep of appellant's home was illegal, the consent appellant gave to police officers to search his home was voluntary. Any taint from the illegal sweep was sufficiently attenuated when appellant voluntarily consented to the search of his residence. The trial court did not err in denying appellant's motion to suppress the evidence obtained when searching his house. Therefore, we reverse the judgment of the court of appeals, and we affirm the conviction in the trial court.