COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-141-CR
 
 
JEFFERY WILLIAM CISSELL                                                    APPELLANT
  
V.
  
THE STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM CRIMINAL DISTRICT COURT 
NO. 3 OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
Jeffery William Cissell was convicted by a jury of sexual assault of a child, 
and the trial court sentenced him to twenty years’ confinement in the 
Institutional Division of the Texas Department of Criminal Justice. The trial 
court certified Appellant’s right to appeal. In one point, Appellant contends 
that the trial court erred when it denied his motion to suppress any oral and 
written statements as well as fruits of his arrest and detention. Because we 
hold that the trial court correctly denied Appellant’s motion to suppress, we 
affirm the trial court’s judgment.
        Joey 
Branch, a Wills Point police officer at the time these events took place, 
testified that he patrolled the town flea market as part of his routine duties. 
He noticed that Appellant had two jet skis for sale in his booth and questioned 
him about their provenance. Appellant claimed that he had gotten the jet skis 
for free. Branch attempted to find out via his radio whether the jet skis had 
been reported stolen. He left the flea market unable to make that determination.
        Joe 
Carter, a game warden with the Texas Parks and Wildlife Department, overheard 
the radio communications and contacted Branch to offer his Department’s 
database. Branch and Carter later returned to the flea market to question 
Appellant further about the jet skis. During the conversation, they discovered 
that Appellant also had a boat for sale at the flea market. The three men went 
outside to look at the boat. At the boat, Carter asked Appellant if he had a 
vehicle at the flea market. When Appellant pointed to his van, Carter asked to 
search it, and Appellant consented. During the search, the officers found 
lingerie, children’s clothing, camera equipment, and a video camera with a 
videotape in it. Branch asked to view the tape, and Appellant consented. The 
tape had footage of a local parade and images of a woman breastfeeding an 
infant. Carter asked Appellant if he had other tapes and where they were. 
Appellant replied that he had around one hundred, at his house in Arlington and 
at his lake house near the flea market. He denied that they depicted children.
        He 
consented to the officers viewing the tapes at the lake house and rode with 
Branch to the lake house, sitting freely in the front passenger seat. While 
viewing the tapes and photos at the lake house, the officers discovered photos 
and videos of females that they suspected were under the age of eighteen. They 
contacted the Van Zandt County Sheriff’s Department, and two deputies were 
sent to the scene. They read Appellant the statutory warnings. Appellant then 
consented to Branch’s seizure of all the tapes and photos for further 
investigation. He was not arrested at this time.
        Back 
at the station, the police discovered as they reviewed the evidence that one of 
the tapes depicted the sexual assault of a female minor. Appellant was then 
arrested for possession of child pornography. Later, as the police continued to 
review the evidence, they discovered another video and photos of Appellant 
sexually assaulting the complainant in the case before us. After Appellant gave 
the police a written statement detailing the incident, the police were able to 
locate the complainant in Fort Worth, Texas.
        Regarding 
the searches of the van and lake house, the trial court made the following 
findings and conclusions:
  
On August 3rd of 2002, when [Appellant] was contacted by Joey Branch and Officer 
Carter, the Defendant was not in custody and not under arrest. [Appellant] was 
not threatened, forced or promised anything, and he voluntarily consented to the 
search of his vehicle and his residence which was located on County Road 3714 in 
Van Zandt County.
 
        The 
appropriate standard for reviewing a trial court’s ruling on a motion to 
suppress evidence is a bifurcated standard of review, giving almost total 
deference to the trial court’s determination of historical facts and reviewing 
de novo the court’s application of the law to those facts.[2]  
If the trial court did not make explicit findings of historical facts, the 
appellate court reviews the evidence in a light most favorable to the trial 
court’s ruling, making the assumption that the trial court made explicit 
findings of fact, supported in the record, that buttressed its conclusion.[3]
        In 
determining whether a consent is valid, the Texas Court of Criminal Appeals has 
held,
In Schneckloth v. 
Bustamonte,[4] the United States Supreme Court 
considered the definition of “voluntary consent” in the context of a search 
and seizure. “When the subject of a search is not in custody and the State 
attempts to justify a search on the basis of his consent, the Fourth and 
Fourteenth Amendments require that it demonstrate that the consent was in fact 
voluntarily given, and not the result of duress or coercion, express or 
implied.” The Court noted that “voluntariness” goes beyond the literal 
meaning of “a knowing choice.” Unless a person is unconscious or 
incapacitated, all statements made could be considered “voluntary in the sense 
of representing a choice of alternatives.” Under this view, even 
physically-forced consent would be voluntary because, in theory, the suspect had 
a choice—either consent to the search or be beaten. On the other hand, we do 
not ask whether the consent would have been given “but-for” the police 
actions or inquiries. Under this view, “virtually no statement would be 
voluntary because very few people give incriminating statements in the absence 
of official action of some kind.” Therefore, the premise of voluntariness does 
not mean that police are required to never question an accused in custody, but 
they must have limits to the measures taken during their interrogations.
  
“In determining whether a 
defendant's will was overborne in a particular case,” the Schneckloth 
Court developed the standard by which consent is tested for voluntariness. Trial 
courts “must [assess] the totality of all the surrounding circumstances--both 
the characteristics of the accused and the details of the interrogation.” By 
looking at the circumstances leading up to the search, the reaction of the 
accused to pressure, and any other factor deemed relevant, a trial court can 
determine whether the statement of consent was given voluntarily. Some relevant 
factors the Supreme Court has taken into consideration in past cases are: the 
youth of the accused, the education of the accused, the intelligence of the 
accused, the constitutional advice given to the accused, the length of the 
detention, the repetitiveness of the questioning, and the use of physical 
punishment.
  
The Texas Constitution 
protects the people against all unreasonable seizures and searches. A search 
made after voluntary consent is not unreasonable. In determining whether a 
defendant's consent was voluntary, the State is required to prove the 
voluntariness of consent by clear and convincing evidence. This Court has held 
that the trial court must look at the totality of the circumstances surrounding 
the statement of consent in order to determine whether that consent was given 
voluntarily.[5]
 
The trial court as fact finder 
is the sole judge of the credibility of the witnesses and the weight to be given 
their testimony.[6]
        Appellant 
argues that his consent to the search and seizure of the evidence from his van 
and lake house was involuntary because he was merely acquiescing to the 
officers’ show of authority—they were armed. He further argues that the 
alleged taint stained his confession. Based on our review of the record, there 
was no evidence that Appellant was young, naive, or mentally deficient. While 
there was no testimony that Branch or Carter told Appellant that he did not have 
to consent to the search of his van or home, there was also no testimony that 
the officers threatened, coerced, or forced Appellant to consent, and there was 
evidence to the contrary. There was no evidence that his will was overborne. 
Based on the applicable standard of review, we hold that the State proved by 
clear and convincing evidence that Appellant’s consent was voluntary, that the 
searches of the van and lake house, and the resulting seizure of evidence, were 
therefore legal, and that the trial court properly denied Appellant’s motion 
to suppress.
        Consequently, 
we overrule Appellant’s sole point and affirm the trial court’s judgment.
   
   
                                                                  PER 
CURIAM
  
 
PANEL F:   DAUPHINOT, 
HOLMAN and GARDNER, JJ.
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: January 27, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman 
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).
3.  
Carmouche, 10 S.W.3d at 327-28; Guzman, 955 S.W.2d at 89.
4.  
412 U.S. 218, 93 S. Ct. 2041 (1973).
5.  
Reasor v. State, 12 S.W.3d 813, 817-18 (Tex. Crim. App. 2000) (citations 
omitted).
6.  
State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).