Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★ ★ ★ ★ ★ ★



# MEMORANDUM OPINION

No. 04-07-00496-CR

Bernard **MITCHELL**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-3774
Honorable Sharon McRae, Judge Presiding

Opinion by:    Steven C. Hilbig, Justice

Sitting:    Catherine Stone, Justice
Karen Angelini, Justice
Steven C. Hilbig, Justice

Delivered and Filed:    September 10, 2008

AFFIRMED

After the trial court denied his pretrial motion to suppress, appellant Bernard Mitchell pleaded no contest to one count of possession with intent to deliver over four hundred grams of cocaine and true to an enhancement allegation. The trial court accepted the plea and sentenced appellant to twenty years confinement in the Texas Department of Criminal Justice–Institutional Division and a $1,500.00 fine. On appeal, appellant contends the trial court erred in denying his pretrial motion to suppress. We affirm the trial court's judgment.

## BACKGROUND

Appellant's brother Curlee Mitchell was wanted in California for a gang-related double murder. Ricardo Fuentes, an investigator with the Riverside County, California District Attorney's Office, learned Curlee Mitchell might be in San Antonio. Investigator Fuentes and Steven Nieves, a detective from the Banning, California police department, came to San Antonio with an arrest warrant. With help from the United States Marshall's Office, the California officers set up surveillance on a house owned by appellant.

Curlee Mitchell and appellant eventually came out of the house and headed toward a car parked in the driveway. The officers pulled into the driveway, ordered both men to the ground, and handcuffed them. Curlee Mitchell was arrested. Once the officers determined appellant had no weapons and was cooperative, they removed his handcuffs. According to Investigator Fuentes, appellant was told he was free to leave and could go back inside the house.

The California officers were interested in collecting evidence that might prove useful in any prosecution of Curlee Mitchell. Investigator Fuentes asked appellant if the officers could go into the house and search for items that belonged to his brother. Detective Nieves also testified he asked appellant for consent to enter the house to search for items Curlee Mitchell might have worn during the California murders. Investigator Fuentes and Detective Nieves stated appellant assented on the condition that he could accompany them into the house. This exchange was confirmed by United States Deputy Marshall Bobby Hogeland who was present at the surveillance. Appellant opened the front door with his key and the California officers went in with him. Appellant led the officers to

an upstairs room identified by appellant as the room Curlee and appellant shared. According to Investigator Fuentes, he and Detective Nieves saw several items of potential evidentiary value.

Detective Nieves asked appellant if he could look in the other upstairs rooms. Detective Nieves testified appellant consented to the entry and search of the other rooms. Detective Nieves said he next entered a "vacant bedroom" and found a red bag in the closet, which appellant said belonged to his brother. In the bag the detective found black ski masks, a gun case, several magazines of ammunition, and some unboxed ammunition. During this portion of the search, Detective Nieves was joined by Detective Richard Funk of the San Antonio Police Department's Repeat Offenders Program, who had arrived after the California officers entered the house. When Detective Funk arrived, he checked appellant's identification and learned appellant was on parole. After he checked the identification he went inside and asked appellant at least twice if they could check the house for weapons. According to Detective Funk appellant said, "yes, you can check." The door to one of the bedrooms was locked. Detectives Nieves and Funk asked appellant if they could enter the room. Appellant identified the room as his parents' room but said he had the key. Appellant produced the key. Because the door was locked, the officers drew their weapons and made an initial sweep of the room to determine whether anyone was inside. When the sweep was completed, the detectives searched the room in appellant's presence. Detective Nieves said he found "several bundles of money in bags," loose ammunition, and saw items in an open dresser drawer he believed were to be used to package drugs. Detective Nieves said all these items were in plain view.

Detective Nieves testified that when the officers saw the alleged drug paraphernalia, appellant claimed he was feeling sick. According to Detective Funk, appellant left and went downstairs to find

Investigator Fuentes. Detective Nieves returned to the bedroom shared by Curlee and appellant, and in a second sweep of the room, found handguns and some ammunition in an open drawer. After discovery of the guns, Detective Nieves told Detective Funk they needed a search warrant.

Appellant was handcuffed and arrested for the offense of felon in possession of a firearm. All officers left the upstairs area and went downstairs to wait for the search warrant. Deputy Hogeland testified he took appellant to the living room where appellant said he wanted to cooperate and initiated a conversation in which he told the deputy there were drugs in a kitchen cabinet. Deputy Hogeland took appellant into the dining room and asked him to sign a consent to search form. The deputy testified that while appellant declined to sign the form he told the deputy, "you can search the house wherever you want, but I'm not signing that document." Deputy Hogeland noted this on the consent form – "Gave voluntary consent but refused to sign this document." According to Deputy Hogeland, from the time appellant was placed on the living room couch in handcuffs there was no further search of the house until a search warrant arrived.

After the search warrant arrived, officers searched the house and appellant's car, finding cocaine and drug paraphernalia. Appellant was indicted on two counts of possession of cocaine, enhanced by a prior felony robbery conviction. Appellant filed a motion to suppress. At the hearing on his motion, appellant testified he never consented to officers entering or searching the house. He claimed the officers searched despite his protests and he never advised them where they could find cocaine. Appellant argued he did not consent to the search and alternatively, if he did consent, the consent was involuntary. The trial court denied the motion. No findings of fact or conclusions of law were requested or filed. Appellant argues on appeal that the trial court erred in denying his

motion to suppress because his consent to search was not voluntary and therefore the search violated his state and federal constitutional rights.

<h2 style="text-align:center">STANDARD OF REVIEW</h2>

We review the trial court's ruling on a motion to suppress under an abuse of discretion standard. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). When findings of fact are not requested or entered, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings that support its ruling as long as the implicit findings are supported by the record. *Harrison v. State*, 205 S.W.3d 549, 552 (Tex. Crim. App. 2006). "[T]he trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). The trial court is entitled to believe or disbelieve all or part of a witness's testimony, even if uncontroverted, because the trial court has the opportunity to observe the witness's demeanor and appearance. *Id.* We therefore give almost total deference to the trial court's determination of historical facts, especially those based on an evaluation of the witnesses' credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). On the other hand, we review *de novo* the trial court's application of the law of search and seizure to the facts. *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). We will sustain the trial court's ruling "if it is reasonably supported by the record and is correct on any theory of law applicable to the case." *Dixon*, 206 S.W.3d at 590. We will reverse only if the trial court's ruling is outside the zone of reasonable disagreement. *Id.*

ANALYSIS

Appellant originally contested the officers' claim that he consented to the initial entry and the ensuing search. However, on appeal, appellant has dropped the consent contention, now arguing only that his consent was involuntary.

We presume a warrantless police entry into an individual's home is unreasonable unless the entry falls within an exception to the warrant requirement. *Johnson v. State*, 226 S.W.3d 439, 443 (Tex. Crim. App. 2007). Voluntary consent is one of the exceptions to the warrant requirement. *Id.* (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). The State must present evidence establishing by clear and convincing evidence the consent was voluntary. *Johnson*, 226 S.W.3d at 443; *see Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007) (holding State "shoulders the burden to prove that exception to the warrant requirement applies."). Whether consent is voluntary rather than coerced or made under duress "turns on questions of fact and is determined from the totality of the circumstances." *Johnson*, 226 S.W.3d at 443 (citing *Schneckloth*, 412 U.S. at 227-29). In determining whether the "defendant's will was overborne" when he gave consent, courts look at the circumstances leading up to the search, the reaction of the defendant to pressure, and any other relevant factor. *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). The court of criminal appeals has suggested numerous factors for consideration, some previously taken into account by the United States Supreme Court: the age, education, and intelligence of the defendant; the length of the detention; any constitutional advice given to the defendant; the repetitiveness of the questioning; the use of physical punishment; whether the defendant was handcuffed; whether the defendant was arrested at gunpoint; whether law enforcement had already

engaged in illegal entry or search; whether any incriminating evidence has been uncovered at the time of the consent; whether *Miranda* warnings have been given; whether the defendant had the option to refuse to consent; and whether the defendant was in custody. *Reasor*, 12 S.W.3d at 818.

The circumstances in this case do not support appellant's contention that the State failed to prove his consent was voluntary. We recognize appellant was never given *Miranda* warnings. This factor weighs against the State's assertion that consent was voluntary. *See Reasor*, 12 S.W.3d 818. However, leaving credibility choices to the trial court, the evidence regarding the other factors militates in favor of the State's contention that it proved by clear and convincing evidence appellant voluntarily consented to the search of his home. Appellant is an adult with some college education. Although appellant was initially handcuffed, the handcuffs were removed within minutes and appellant was told he could leave. Appellant elected to remain at the house. Appellant was not placed in handcuffs again until after officers found ammunition and weapons and he was arrested for being a felon in possession of a firearm. This occurred after he consented to the search. Police officers did not have their weapons drawn when appellant consented to entry into the house, or when he consented to the search of the bedrooms. The only time weapons were displayed during the search occurred during the protective sweep of the locked bedroom. Appellant does not claim the police engaged in any physical punishment. Appellant led officers from room to room and unlocked doors to facilitate the search.

Considering all of the circumstances and giving proper deference to the trial court's determination, we hold the State proved by clear and convincing evidence that appellant's consent was voluntary.

## CONCLUSION

We conclude the trial court did not abuse its discretion in denying appellant's motion to suppress. We overrule appellant's issues and affirm the trial court's judgment.

Steven C. Hilbig, Justice

Do Not Publish