TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00365-CR






Tony Keith Wells, Appellant


v.


The State of Texas, Appellee






FROM COUNTY COURT AT LAW NO. 3 OF BELL COUNTY

NO. 2C08-00902, HONORABLE GERALD M. BROWN, JUDGE PRESIDING






M E M O R AN D U M O P I N I O N



 A jury convicted Tony Keith Wells of the misdemeanor offense of possessing less
than two ounces of marihuana and imposed a $1,500 fine. In his sole issue on appeal, Wells asserts
that the trial court erred in denying his motion to suppress evidence of the marihuana found in his
tractor trailer, contending that the evidence is the product of an unlawfully prolonged detention and
involuntary consent to search. We will affirm the judgment of conviction.



BACKGROUND


 At a pretrial suppression hearing, the trial court heard evidence that Texas Department
of Public Safety Trooper Donnie Ray Carter, Jr. stopped Wells on Interstate Highway 35 in
Bell County because the tractor trailer that Wells was driving had mud flaps that were too short. See
Tex. Transp. Code Ann. § 547.606(a) (West 1999) (requiring truck-tractor in combination with
semitrailer to have flaps that are within eight inches of highway surface). When Carter approached
the vehicle, he noticed that Wells's eyes appeared glassy, his pupils were very small, and he seemed
to be "under the influence of something." Carter informed Wells of these observations, and Wells
denied being on any medication. While Carter wrote a warning citation for the mud flap violation,
a dispatcher relayed the results of Wells's criminal-history check (1) and his lack of outstanding
warrants. Before giving the written warning to Wells, Carter asked for consent to search his truck.
From this point forward, Wells's and Carter's accounts of events conflict.

 In addition to hearing Wells's and Carter's testimony, the trial court reviewed a
patrol-car video recording of the traffic stop that broadcast intermittent audio from Carter's
body microphone. Portions of the conversation between Wells and Carter were broadcast from
Carter's body microphone to the patrol car recording, but the recording is sporadic because of the
microphone's failing battery. The recording did not capture any discussion about consent to search
the truck, thus the witnesses' conflicting testimony was the only evidence before the trial court on
the issue of consent.

 Wells testified initially that he did not give Carter any type of consent to search
the truck. He then testified that he gave Carter limited consent to walk around the vehicle with a
"drug dog." (2) Wells knew the reasons for the search request because Carter expressed concerns to
him. Wells stated that Carter wanted to search the truck because Wells's eyes were glassy and
because of the possibility that Wells was "under the influence of something."

 Carter testified unequivocally that Wells consented to the search of the truck. He
recalled that Wells had glassy eyes with very small pupils, that he appeared to be "under the
influence of something," and that he gave unusually short responses during their conversation. 
Carter then asked Wells whether there was anything illegal in the truck and whether he could search
it. For Wells's safety and his own, Carter did not begin searching the truck until a backup officer
arrived and Wells was seated in the front passenger side of the patrol car. (3) Carter proceeded to
search the cab of the truck, where he saw a black shaving kit on the sleeper. Inside the kit, he found
a pill bottle containing a rolled "cigarette" that appeared to be marihuana. Carter testified that he
returned to the patrol car with the pill bottle and asked Wells about the contents, which Wells
identified as "a little bit of marihuana." Carter then arrested Wells for possession of marihuana and
gave Wells his Miranda warnings. (4) See Miranda v. Arizona, 384 U.S. 436, 479 (1966).

 At the conclusion of the hearing, the trial court denied the motion to suppress
evidence of the marihuana, and the case proceeded to trial. (5) Trooper Carter and Starla Copeland, a
forsensic scientist with the Texas Department of Public Safety's crime lab, were the only witnesses
called to testify. Copeland confirmed that the substance in the rolled up cigarette was marihuana, 
and a jury found Wells guilty of the offense of possessing less than two ounces of marihuana,
assessing a $1,500 fine as punishment. See Tex. Health & Safety Code Ann. § 481.121(a), (b)(1)
(West 2010). Wells now appeals.


ANALYSIS


 Wells challenges the trial court's refusal to suppress the marihuana evidence
discovered in his truck because it was the product of an unlawfully prolonged detention after the
mud-flap violation was resolved and because his consent to search the truck was involuntary. (6) We
disagree.


Standard of review

 When reviewing the denial of a motion to suppress, we apply a bifurcated standard.
State v. Valtierra, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, we afford almost total
deference to the trial court's determination of historical facts. Id. The trial judge, who observes the
witnesses' appearance and demeanor firsthand, is the sole trier of fact and best suited to gauge the
witnesses' credibility and the weight to be given their testimony. Id. When, as here, the trial court
does not enter findings of fact, we "must view the evidence 'in the light most favorable to the
trial court's ruling' and 'assume that the trial court made implicit findings of fact that support its
ruling as long as those findings are supported by the record.'" Id. (quoting State v. Ross, 32 S.W.3d
853, 855 (Tex. Crim. App. 2000)). Second, we review de novo a trial court's application of the
law of search and seizure to the facts. Id. If the ruling on the motion to suppress is "reasonably
supported by the record and is correct under any theory of law applicable to the case," the ruling will
be sustained. Id. at 447-48 (quoting State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)).


Duration of detention

 We first address Wells's contention that the search that produced the marihuana
evidence was the result of an unlawfully prolonged detention. The Fourth Amendment's protection
against unreasonable searches and seizures extends to all seizures of the person, including those
that involve only a brief detention. United States v. Mendenhall, 446 U.S. 544, 551 (1980); see
Leach v. State, 35 S.W.3d 232, 235-36 (Tex. App.--Austin 2000, no pet.); see also U.S. Const.
amend. IV. An officer conducts a lawful temporary detention when he has reasonable suspicion
to believe that a person is violating the law. Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim.
App. 2005).

 Investigative detentions such as traffic stops must be temporary and last no longer
than necessary to effectuate the purpose of the stop. Florida v. Royer, 460 U.S. 491, 500 (1983);
Kothe v. State, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). The United States Supreme Court has
rejected rigid time limitations on investigative detentions, instead asking "whether the police
diligently pursued a means of investigation that was likely to confirm or dispel their suspicions
quickly, during which time it was necessary to detain the defendant." Kothe, 152 S.W.3d at 64-65
(quoting United States v. Sharpe, 470 U.S. 675, 685-86 (1985) (refusing to "establish a per se rule
that a 20-minute detention is too long")). An officer who has concluded an investigation of the
conduct that initiated the stop may continue to detain a person only if there is reasonable suspicion
to believe that another offense has been or is being committed. Davis v. State, 947 S.W.2d 240, 245
(Tex. Crim. App. 1997). Put differently, "once the original purpose for the stop is exhausted, police
may not unnecessarily detain drivers solely in hopes of finding evidence of some other crime."
Kothe, 152 S.W.3d at 64.

 Whether reasonable suspicion exists is determined by considering the facts known
to the officer at the time of the detention. See Terry v. Ohio, 392 U.S. 1, 21-22 (1968); Davis,
947 S.W.2d at 243. Reasonable suspicion exists if the officer has specific, articulable facts that,
when combined with rational inferences from those facts, would lead him to reasonably
conclude that the person detained is, has been, or soon will be engaged in criminal activity.
Derichsweiler v. State, No. PD-0176-10, 2011 Tex. Crim. App. LEXIS 112, at *15-16 (Tex. Crim.
App. Jan. 26, 2011); Ford, 158 S.W.3d at 492; see also Terry, 392 U.S. at 21-22. This is an
objective standard, applied by considering the totality of the circumstances. Derichsweiler,
2011 Tex. Crim. App. LEXIS at *16.

 Wells contends that the purpose of Carter's stop was complete after receipt of the "all
clear" on the warrants check and notes that almost twenty-seven minutes elapsed from his stop to
his arrest. He contends specifically that the request to search the truck was an unjustified delay in
his detention because Carter did not have any reasonable suspicion that Wells was impaired. (7) At the suppression hearing, however, Wells acknowledged that Carter told him on
the scene that his possible impairment was a basis for the request to search:


 Q. Okay. Because of the look of your eyes, Trooper Carter asked to search the
vehicle?


A. Yes.


Q. Is that your understanding--the only--


A. That's why--


Q. --reason why?


A. --my understanding.


Q. Is that the only reason why he wanted to search your vehicle, because of your
eyes?


A. And maybe I was under the influence of something.


Q. Did he express that to you?


A. Yes.



 Carter's testimony indicated specific observations of Wells during the traffic stop
which, along with rational inferences, would support a reasonable suspicion that Wells had
been operating the tractor trailer while under the influence of an illegal substance. Carter noticed
that Wells's eyes were glassy and his pupils were constricted. He engaged Wells in conversation
to determine whether he was under the influence but was only able to elicit abrupt answers. Wells
denied taking any medication, and Carter did not suspect alcohol intoxication.

 Additionally, the duration of Wells's detention was not unreasonable. Carter sought
Wells's consent to search the truck and requested backup just three minutes after the dispatcher's
"all clear" report. Carter testified that Wells consented to the search of the truck. Then, as Wells
notes, a second officer was at the scene eight minutes after the request to search.

 Based on this record, we conclude that the marihuana was not the product of an
unlawfully prolonged detention. Carter had reasonable suspicion of Wells's involvement in criminal
activity to justify the temporary detention, and he diligently pursued a course of investigation to
confirm or dispel his reasonable suspicion in a timely manner.


Voluntariness of consent

 Having concluded that Carter had reasonable suspicion to detain Wells, we must
now consider whether Wells consented voluntarily to the search, making his consent valid and the
discovered marihuana evidence admissible. See Gutierrez v. State, 221 S.W.3d 680, 686 (Tex. Crim.
App. 2007). Search by consent is a well-established exception to the warrant and probable cause
requirements of the Fourth Amendment. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973);
Gutierrez, 221 S.W.3d at 686. A search made after voluntary consent is not unreasonable. Reasor
v. State, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000).

 The validity of a consensual search is a fact question. Gutierrez, 221 S.W.3d at 686.
The State bears the burden of proving by clear-and-convincing evidence that the consent was
obtained voluntarily, including proof that the consent was not the product of duress or coercion. Id.
Determining whether this burden is met requires examination of the totality of the circumstances.
Id. 686-87. When there is clear and convincing evidence in the record supporting a finding that
consent to search was freely and voluntarily given, we will not disturb that finding. Carmouche
v. State, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000).

 Factors considered in determining voluntariness include: (1) whether the consenting
person was in custody; (2) whether the person was arrested at gunpoint; (3) whether the person had
the option of refusing consent; (4) the constitutional advice given to the person; (5) the length of
detention; (6) the repetitiveness of the questioning; and (7) the use of physical punishment. Reasor,
12 S.W.3d at 818; Flores v. State, 172 S.W.3d 742, 749 (Tex. App.--Houston [14th Dist.] 2005,
no pet.). Courts also consider the consenting person's age, education, and intelligence. Reasor,
12 S.W.3d at 818. Additional factors bearing on the issue of voluntariness include whether the
person was confronted by multiple officers, see Carmouche, 10 S.W.3d at 332-33, whether the
officer retained the person's driver's license before obtaining consent, see United States v. Jones,
234 F.3d 234, 243 (5th Cir. 2000), whether the person was informed of the suspected offense, see
Paulus v. State, 633 S.W.2d 827, 850 (Tex. Crim. App. 1982), whether the person knew the purpose
of the search, see May v. State, 618 S.W.2d 333, 345 (Tex. Crim. App. 1981), and whether the
person knew of the right to refuse consent, see Carmouche, 10 S.W.3d at 332-33. As the range of
these factors demonstrates, an examination of the totality of the circumstances includes all the
circumstances before the search, the person's reaction to pressure, and any other factor deemed
relevant. Reasor, 12 S.W.3d at 818. Not all of these factors are addressed in this record.

 In support of his assertion that his consent was involuntary, Wells points to Carter's
retention of his insurance and driver's license, see Jones, 234 F.3d at 243 (noting that coercion to
consent could be inferred from officer's retention of driver's license and rental-car agreement), and
argues that he inferred he was not free to go when he gave his consent. See Carmouche, 10 S.W.3d
at 332-33. However, other relevant factors in the record support the trial court's finding that Wells's
consent to search was freely and voluntarily given. Wells was not handcuffed, arrested at gunpoint,
or subjected to physical punishment when Carter asked him for consent to search the truck. He was
not confronted by multiple police officers when he was asked for consent to search; Carter was the
only officer at the scene at that time. The patrol-car video does not give any indication that Carter
behaved in such a way as to threaten or coerce Wells. The duration of the detention from receipt of
the dispatcher's "all clear" report to Carter's request for a backup officer was only three minutes.
Additionally, it can be inferred that Wells knew Carter would look for illegal substances, given that
Carter had asked Wells whether he was on any medication and had conveyed the impression
that Wells was "under the influence of something." Wells was 41 years old and familiar with the
legal system, having been arrested previously for possession of an illegal substance. Finally, Carter
testified that Wells gave consent to search the vehicle, and there is no evidence in this record
that Wells was unaware of his right to withhold consent. In fact, Wells testified initially at the
motion to suppress hearing that he did not consent, later testified that he gave only limited consent,
and now contends that any consent to search that may be implied from the trial court's ruling was
obtained involuntarily.

 Considering the totality of the circumstances, we hold that the record supports
the trial court's finding by clear-and-convincing evidence that Wells's consent to search was freely
and voluntarily given. After reviewing de novo the trial court's application of search and seizure law
and giving proper deference to the trial court's determination of facts that are supported by the
record, we conclude that the trial court did not abuse its discretion by denying Wells's motion to
suppress evidence of the marihuana that was found in the tractor trailer. Accordingly, we overrule
Wells's sole issue.

CONCLUSION


 Having overruled Wells's sole issue, we affirm the trial court's judgment of
conviction.



 

 Jeff Rose, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: April 21, 2011

Do Not Publish
1. The trial court suppressed evidence of the offenses of injury to a child and possession of
narcotics that were revealed in the dispatcher's report of Wells's criminal history.
2. The record does not reflect that a drug dog was summoned or used.
3. According to Wells, there was an eight minute wait between the request for consent to
search and the backup officer's arrival.
4. An audio recording reflects that while alone in the patrol car, Wells mused aloud whether
he should have eaten the marihuana.
5. The trial court suppressed portions of audio from the patrol-car video containing the
dispatcher's report of Wells's criminal history and the dispatcher's conversations with police about
other driver's license and criminal history checks unrelated to this case.
6. Wells does not challenge the validity of the initial stop and detention for the trailer's mud-flap violation.
7. Carter testified that he did not believe Wells was intoxicated.