# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00365-CR

**Tony Keith Wells, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM COUNTY COURT AT LAW NO. 3 OF BELL COUNTY
### NO. 2C08-00902, HONORABLE GERALD M. BROWN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Tony Keith Wells of the misdemeanor offense of possessing less than two ounces of marihuana and imposed a $1,500 fine. In his sole issue on appeal, Wells asserts that the trial court erred in denying his motion to suppress evidence of the marihuana found in his tractor trailer, contending that the evidence is the product of an unlawfully prolonged detention and involuntary consent to search. We will affirm the judgment of conviction.

## BACKGROUND

At a pretrial suppression hearing, the trial court heard evidence that Texas Department of Public Safety Trooper Donnie Ray Carter, Jr. stopped Wells on Interstate Highway 35 in Bell County because the tractor trailer that Wells was driving had mud flaps that were too short. *See* Tex. Transp. Code Ann. § 547.606(a) (West 1999) (requiring truck-tractor in combination with

semitrailer to have flaps that are within eight inches of highway surface). When Carter approached the vehicle, he noticed that Wells's eyes appeared glassy, his pupils were very small, and he seemed to be "under the influence of something." Carter informed Wells of these observations, and Wells denied being on any medication. While Carter wrote a warning citation for the mud flap violation, a dispatcher relayed the results of Wells's criminal-history check[1] and his lack of outstanding warrants. Before giving the written warning to Wells, Carter asked for consent to search his truck. From this point forward, Wells's and Carter's accounts of events conflict.

In addition to hearing Wells's and Carter's testimony, the trial court reviewed a patrol-car video recording of the traffic stop that broadcast intermittent audio from Carter's body microphone. Portions of the conversation between Wells and Carter were broadcast from Carter's body microphone to the patrol car recording, but the recording is sporadic because of the microphone's failing battery. The recording did not capture any discussion about consent to search the truck, thus the witnesses' conflicting testimony was the only evidence before the trial court on the issue of consent.

Wells testified initially that he did not give Carter any type of consent to search the truck. He then testified that he gave Carter limited consent to walk around the vehicle with a "drug dog."[2] Wells knew the reasons for the search request because Carter expressed concerns to him. Wells stated that Carter wanted to search the truck because Wells's eyes were glassy and because of the possibility that Wells was "under the influence of something."

---

[1] The trial court suppressed evidence of the offenses of injury to a child and possession of narcotics that were revealed in the dispatcher's report of Wells's criminal history.

[2] The record does not reflect that a drug dog was summoned or used.

2

Carter testified unequivocally that Wells consented to the search of the truck. He recalled that Wells had glassy eyes with very small pupils, that he appeared to be "under the influence of something," and that he gave unusually short responses during their conversation. Carter then asked Wells whether there was anything illegal in the truck and whether he could search it. For Wells's safety and his own, Carter did not begin searching the truck until a backup officer arrived and Wells was seated in the front passenger side of the patrol car.[3] Carter proceeded to search the cab of the truck, where he saw a black shaving kit on the sleeper. Inside the kit, he found a pill bottle containing a rolled "cigarette" that appeared to be marihuana. Carter testified that he returned to the patrol car with the pill bottle and asked Wells about the contents, which Wells identified as "a little bit of marihuana." Carter then arrested Wells for possession of marihuana and gave Wells his Miranda warnings.[4] *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966).

At the conclusion of the hearing, the trial court denied the motion to suppress evidence of the marihuana, and the case proceeded to trial.[5] Trooper Carter and Starla Copeland, a forsensic scientist with the Texas Department of Public Safety's crime lab, were the only witnesses called to testify. Copeland confirmed that the substance in the rolled up cigarette was marihuana, and a jury found Wells guilty of the offense of possessing less than two ounces of marihuana,

---

[3] According to Wells, there was an eight minute wait between the request for consent to search and the backup officer's arrival.

[4] An audio recording reflects that while alone in the patrol car, Wells mused aloud whether he should have eaten the marihuana.

[5] The trial court suppressed portions of audio from the patrol-car video containing the dispatcher's report of Wells's criminal history and the dispatcher's conversations with police about other driver's license and criminal history checks unrelated to this case.

assessing a $1,500 fine as punishment. *See* Tex. Health & Safety Code Ann. § 481.121(a), (b)(1)
(West 2010). Wells now appeals.

## ANALYSIS

Wells challenges the trial court's refusal to suppress the marihuana evidence
discovered in his truck because it was the product of an unlawfully prolonged detention after the
mud-flap violation was resolved and because his consent to search the truck was involuntary.[6] We
disagree.

### *Standard of review*

When reviewing the denial of a motion to suppress, we apply a bifurcated standard.
*State v. Valtierra*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). First, we afford almost total
deference to the trial court's determination of historical facts. *Id*. The trial judge, who observes the
witnesses' appearance and demeanor firsthand, is the sole trier of fact and best suited to gauge the
witnesses' credibility and the weight to be given their testimony. *Id*. When, as here, the trial court
does not enter findings of fact, we "must view the evidence 'in the light most favorable to the
trial court's ruling' and 'assume that the trial court made implicit findings of fact that support its
ruling as long as those findings are supported by the record.'" *Id.* (quoting *State v. Ross*, 32 S.W.3d
853, 855 (Tex. Crim. App. 2000)). Second, we review de novo a trial court's application of the
law of search and seizure to the facts. *Id*. If the ruling on the motion to suppress is "reasonably

---

[6] Wells does not challenge the validity of the initial stop and detention for the trailer's mud-
flap violation.

supported by the record and is correct under any theory of law applicable to the case," the ruling will

be sustained. *Id.* at 447-48 (quoting *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)).

### *Duration of detention*

We first address Wells's contention that the search that produced the marihuana

evidence was the result of an unlawfully prolonged detention. The Fourth Amendment's protection

against unreasonable searches and seizures extends to all seizures of the person, including those

that involve only a brief detention. *United States v. Mendenhall*, 446 U.S. 544, 551 (1980); *see*

*Leach v. State*, 35 S.W.3d 232, 235-36 (Tex. App.—Austin 2000, no pet.); *see also* U.S. Const.

amend. IV. An officer conducts a lawful temporary detention when he has reasonable suspicion

to believe that a person is violating the law. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim.

App. 2005).

Investigative detentions such as traffic stops must be temporary and last no longer

than necessary to effectuate the purpose of the stop. *Florida v. Royer*, 460 U.S. 491, 500 (1983);

*Kothe v. State*, 152 S.W.3d 54, 63 (Tex. Crim. App. 2004). The United States Supreme Court has

rejected rigid time limitations on investigative detentions, instead asking "whether the police

diligently pursued a means of investigation that was likely to confirm or dispel their suspicions

quickly, during which time it was necessary to detain the defendant." *Kothe*, 152 S.W.3d at 64-65

(quoting *United States v. Sharpe*, 470 U.S. 675, 685-86 (1985) (refusing to "establish a per se rule

that a 20-minute detention is too long")). An officer who has concluded an investigation of the

conduct that initiated the stop may continue to detain a person only if there is reasonable suspicion

to believe that another offense has been or is being committed. *Davis v. State*, 947 S.W.2d 240, 245

(Tex. Crim. App. 1997). Put differently, "once the original purpose for the stop is exhausted, police may not *unnecessarily* detain drivers solely in hopes of finding evidence of some other crime." *Kothe*, 152 S.W.3d at 64.

Whether reasonable suspicion exists is determined by considering the facts known to the officer at the time of the detention. *See Terry v. Ohio*, 392 U.S. 1, 21-22 (1968); *Davis*, 947 S.W.2d at 243. Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that the person detained is, has been, or soon will be engaged in criminal activity. *Derichsweiler v. State*, No. PD-0176-10, 2011 Tex. Crim. App. LEXIS 112, at *15-16 (Tex. Crim. App. Jan. 26, 2011); *Ford*, 158 S.W.3d at 492; *see also Terry*, 392 U.S. at 21-22. This is an objective standard, applied by considering the totality of the circumstances. *Derichsweiler*, 2011 Tex. Crim. App. LEXIS at *16.

Wells contends that the purpose of Carter's stop was complete after receipt of the "all clear" on the warrants check and notes that almost twenty-seven minutes elapsed from his stop to his arrest. He contends specifically that the request to search the truck was an unjustified delay in his detention because Carter did not have any reasonable suspicion that Wells was impaired.[7]

At the suppression hearing, however, Wells acknowledged that Carter told him on the scene that his possible impairment was a basis for the request to search:

> Q. Okay. Because of the look of your eyes, Trooper Carter asked to search the
> vehicle?

---

[7] Carter testified that he did not believe Wells was intoxicated.

6

A.   Yes.

Q.   Is that your understanding—the only—

A.   That's why—

Q.   —reason why?

A.   —my understanding.

Q.   Is that the only reason why he wanted to search your vehicle, because of your eyes?

A.   And maybe I was under the influence of something.

Q.   Did he express that to you?

A.   Yes.

Carter's testimony indicated specific observations of Wells during the traffic stop which, along with rational inferences, would support a reasonable suspicion that Wells had been operating the tractor trailer while under the influence of an illegal substance. Carter noticed that Wells's eyes were glassy and his pupils were constricted. He engaged Wells in conversation to determine whether he was under the influence but was only able to elicit abrupt answers. Wells denied taking any medication, and Carter did not suspect alcohol intoxication.

Additionally, the duration of Wells's detention was not unreasonable. Carter sought Wells's consent to search the truck and requested backup just three minutes after the dispatcher's "all clear" report. Carter testified that Wells consented to the search of the truck. Then, as Wells notes, a second officer was at the scene eight minutes after the request to search.

7

Based on this record, we conclude that the marihuana was not the product of an unlawfully prolonged detention. Carter had reasonable suspicion of Wells's involvement in criminal activity to justify the temporary detention, and he diligently pursued a course of investigation to confirm or dispel his reasonable suspicion in a timely manner.

### *Voluntariness of consent*

Having concluded that Carter had reasonable suspicion to detain Wells, we must now consider whether Wells consented voluntarily to the search, making his consent valid and the discovered marihuana evidence admissible. *See Gutierrez v. State*, 221 S.W.3d 680, 686 (Tex. Crim. App. 2007). Search by consent is a well-established exception to the warrant and probable cause requirements of the Fourth Amendment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Gutierrez*, 221 S.W.3d at 686. A search made after voluntary consent is not unreasonable. *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000).

The validity of a consensual search is a fact question. *Gutierrez*, 221 S.W.3d at 686. The State bears the burden of proving by clear-and-convincing evidence that the consent was obtained voluntarily, including proof that the consent was not the product of duress or coercion. *Id*. Determining whether this burden is met requires examination of the totality of the circumstances. *Id*. 686-87. When there is clear and convincing evidence in the record supporting a finding that consent to search was freely and voluntarily given, we will not disturb that finding. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000).

Factors considered in determining voluntariness include: (1) whether the consenting person was in custody; (2) whether the person was arrested at gunpoint; (3) whether the person had

8

the option of refusing consent; (4) the constitutional advice given to the person; (5) the length of detention; (6) the repetitiveness of the questioning; and (7) the use of physical punishment. *Reasor*, 12 S.W.3d at 818; *Flores v. State*, 172 S.W.3d 742, 749 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Courts also consider the consenting person's age, education, and intelligence. *Reasor*, 12 S.W.3d at 818. Additional factors bearing on the issue of voluntariness include whether the person was confronted by multiple officers, *see Carmouche*, 10 S.W.3d at 332-33, whether the officer retained the person's driver's license before obtaining consent, *see United States v. Jones*, 234 F.3d 234, 243 (5th Cir. 2000), whether the person was informed of the suspected offense, *see Paulus v. State*, 633 S.W.2d 827, 850 (Tex. Crim. App. 1982), whether the person knew the purpose of the search, *see May v. State*, 618 S.W.2d 333, 345 (Tex. Crim. App. 1981), and whether the person knew of the right to refuse consent, *see Carmouche,* 10 S.W.3d at 332-33. As the range of these factors demonstrates, an examination of the totality of the circumstances includes all the circumstances before the search, the person's reaction to pressure, and any other factor deemed relevant. *Reasor*, 12 S.W.3d at 818. Not all of these factors are addressed in this record.

In support of his assertion that his consent was involuntary, Wells points to Carter's retention of his insurance and driver's license, *see Jones*, 234 F.3d at 243 (noting that coercion to consent could be inferred from officer's retention of driver's license and rental-car agreement), and argues that he inferred he was not free to go when he gave his consent. *See Carmouche*, 10 S.W.3d at 332-33. However, other relevant factors in the record support the trial court's finding that Wells's consent to search was freely and voluntarily given. Wells was not handcuffed, arrested at gunpoint, or subjected to physical punishment when Carter asked him for consent to search the truck. He was

9

not confronted by multiple police officers when he was asked for consent to search; Carter was the only officer at the scene at that time. The patrol-car video does not give any indication that Carter behaved in such a way as to threaten or coerce Wells. The duration of the detention from receipt of the dispatcher's "all clear" report to Carter's request for a backup officer was only three minutes. Additionally, it can be inferred that Wells knew Carter would look for illegal substances, given that Carter had asked Wells whether he was on any medication and had conveyed the impression that Wells was "under the influence of something." Wells was 41 years old and familiar with the legal system, having been arrested previously for possession of an illegal substance. Finally, Carter testified that Wells gave consent to search the vehicle, and there is no evidence in this record that Wells was unaware of his right to withhold consent. In fact, Wells testified initially at the motion to suppress hearing that he did not consent, later testified that he gave only limited consent, and now contends that any consent to search that may be implied from the trial court's ruling was obtained involuntarily.

Considering the totality of the circumstances, we hold that the record supports the trial court's finding by clear-and-convincing evidence that Wells's consent to search was freely and voluntarily given. After reviewing de novo the trial court's application of search and seizure law and giving proper deference to the trial court's determination of facts that are supported by the record, we conclude that the trial court did not abuse its discretion by denying Wells's motion to suppress evidence of the marihuana that was found in the tractor trailer. Accordingly, we overrule Wells's sole issue.

## CONCLUSION

Having overruled Wells's sole issue, we affirm the trial court's judgment of conviction.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed:   April 21, 2011

Do Not Publish

11