

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NOS.  2-08-230-CR
2-08-231-CR

ERIC S. GARDNER, JR.                                                            APPELLANT

V.

THE STATE OF TEXAS                                                                  STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### Introduction

The State alleged Appellant Eric S. Gardner, Jr. violated a condition of his deferred adjudication probation by possessing, with intent to deliver, four grams or more, but less than 200 grams, of cocaine.  Appellant appeals the trial court's order granting the State's motion to revoke his community supervision.

------------

[1]... *See* Tex. R. App. P. 47.4.

In his sole point, Appellant argues the trial court abused its discretion by overruling Appellant's objection to the admission of evidence obtained by a warrantless search of his person without his consent. We will reverse and remand.

## Factual and Procedural Background

On May 6, 2004, Appellant received a ten-year deferred adjudication probation after he pleaded guilty to two counts of possession of a controlled substance with intent to deliver. The terms of appellant's probation required, among other things, that he not violate state or federal laws.

On August 8, 2007, Fort Worth Police Officers Stepp and Parsons stopped a vehicle after observing the car run a stop sign. Following the driver's arrest on an outstanding warrant, Officer Parsons asked Appellant, seated in the front passenger seat, and the backseat passenger to step out of the car.[2]

After patting down the backseat passenger, Officer Parsons searched Appellant's person. Officer Parsons conducted multiple, consecutive searches of Appellant. During the third search, Officer Parsons tugged on the side of Appellant's shorts and the button fastening the waistband popped off. Officer Parsons ordered Appellant to put his legs together and Appellant's shorts fell

---

[2] Officer Parsons did not testify at the hearing. He was in Kentucky attending his mother's funeral.

2

to the ground.  Officer Parsons then reached into Appellant's boxer shorts and removed three small bags containing a white substance which Officer Stepp believed to be cocaine.[3]  Appellant was arrested and charged with possession of a controlled substance with intent to deliver.[4]

On January 14, 2008, the State filed a First Amended Petition to Proceed to Adjudication alleging Appellant violated a provision of his community supervision by possessing a controlled substance, cocaine of four grams or more but less than 200 grams, with intent to deliver.[5]  The trial court conducted a hearing on May 21, 2008.  Appellant pleaded "not true" to the allegations in the amended petition.

Appellant testified at the hearing that Officer Parsons did not request, nor did Appellant grant, consent to search Appellant.  Officer Stepp testified he

---

[3]... At the hearing, a forensic scientist employed by the City of Fort Worth testified that, in her opinion, the three bags of powder totaled 82.9 grams of cocaine hydrochloride.

[4]... Appellant testified he requested to have his shorts pulled up after he was handcuffed. Officers walked Appellant to the patrol car and drove him to a police station before granting his request.

[5]... Nine days after the hearing to revoke Appellant's community supervision, the State dropped the charge against Appellant of possession of a controlled substance with intent to deliver.

observed Appellant's hands in the air during the search,[6] and—during direct examination—said he personally heard Appellant consent to the search. When recalled to the stand by Appellant, Officer Stepp said he did not specifically hear the question Officer Parsons posed to Appellant. Officer Stepp also admitted he did not know whether Appellant was consenting to a search:

> Q. *Appellant's Trial Attorney*: "Maybe [Officer Parsons] said, 'Are you Eric Gardner?' and [Appellant] said, 'Yeah.'"
>
> A. *Officer Stepp*: "He could have."

Officer Stepp did not recall how Appellant's pants fell to the ground, nor did Officer Stepp hear Officer Parsons say anything to Appellant about conducting the search for the officers' safety. Officer Stepp also testified that while he believed Officer Parsons heard or felt something in the search of Appellant that caused him to further the search, Officer Stepp neither saw, heard, nor felt any evidence on Appellant's person. Officer Stepp responded to Appellant's final question as follows:

> Q. *Appellant's Trial Attorney*: "So you're saying it was a consent to search, but you didn't hear the question and you don't know what the answer was?"
>
> A. *Officer Stepp*: "Yes, sir."

---

[6] Appellant testified he had his arms up because the officer asked him to get in a position so the officer could search him.

The trial court overruled Appellant's objections to admitting the warrantless, non-consensual search—and search results—into evidence. The trial court adjudicated Appellant guilty and sentenced him to two consecutive twenty-year terms in state prison. On appeal, Appellant argues the court abused its discretion by overruling his objections.

## Standards of Review

We review an order revoking community supervision under an abuse of discretion standard. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); *Jackson v. State*, 645 S.W.2d 303, 305 (Tex. Crim. App. 1983); *Cherry v. State*, 215 S.W.3d 917, 919 (Tex. App.—Fort Worth 2007, pet. ref'd). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated the terms and conditions of community supervision. *Cobb v. State*, 851 S.W.2d 871, 873 (Tex. Crim. App. 1993); *Cherry*, 215 S.W.3d at 919. If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking the community supervision. *Cardona*, 665 S.W.2d at 493–94; *Cherry*, 215 S.W.3d at 919.

The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Cardona*, 665 S.W.2d at 493; *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981); *Cherry*,

5

215 S.W.3d at 919. When the record is silent on the reasons for the trial court's ruling, or when there are no explicit fact findings and neither party timely requested findings and conclusions of the trial court, we imply the necessary fact findings that would support the trial court's ruling if the evidence, viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 819 (Tex. Crim. App. 2006); *see Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007).

Consensual Search

Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043–44 (1973)). To be valid, a consent to search must be positive and unequivocal and must not be the product of duress or coercion, either express or implied. *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991), *cert. denied*, 510 U.S. 831, 114 S. Ct. 101 (1993). Voluntary consent is not shown by a mere acquiescence to a claim of lawful authority; rather, the trial court must look at the totality of the circumstances to determine whether consent was given voluntarily. *Ohio v. Robinette*, 519 U.S. 33, 39, 117 S. Ct. 417, 421 (1996);

6

*Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). By reviewing the circumstances prior to the search, the reaction of the accused, and any other factor deemed relevant, a trial court can determine whether voluntary consent occurred. *Reasor*, 12 S.W.3d at 818. The Federal Constitution requires the State to prove voluntary consent by a preponderance of the evidence, but the Texas constitution requires proof by clear and convincing evidence. *Carmouche*, 10 S.W.3d at 331.

### State Failed to Meet Consent Burden

The State was required to prove by clear and convincing evidence that Appellant's consent to a search was both positive and unequivocal. *Id.* In other words, the State must prove Appellant left no doubt he consented to the search and that his words expressing his consent were, viewing the totality of the circumstances, capable of only one reasonable interpretation and free from uncertainty. *See Reasor*, 12 S.W.3d at 818; *Allridge*, 850 S.W.2d at 493; *see also* Black's Law Dictionary 1667 (9th ed. 2000) (defining the term "unequivocal").

In this case, simply hearing Appellant say, "Yeah," leaves uncertainty, at a minimum, because there is no evidence of the question posed to him. Multiple reasonable interpretations regarding the question Officer Parsons posed to Appellant are possible. *See Thomas v. State*, No. 14-99-00949-CR, 2000

7

WL 1785110, at *4 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (not designated for publication) (holding appellant's statement to "[j]ust go" in response to officer's consent to search was equivocal in that a rational person might interpret it as permission to "go ahead and search" or that she wanted the police out of her home); *but see U.S. v. Mendoza-Gonzalez*, 318 F.3d 663, 667 (5th Cir. 1981), *cert. denied*, 538 U.S. 1049 (2003) (in upholding search, noting that defendant's decision not to place any limitations in his response to officers' general request is evidence of general consent to search). By agreeing Appellant could have been affirmatively responding to Officer Parson's inquiry, "Are you Eric Gardner?", Officer Stepp demonstrated that Appellant's response was subject to multiple, reasonable interpretations.

Similarly, Officer Stepp's testimony that he observed Appellant's arms raised during the search does not alleviate the uncertainty of whether Appellant positively and unequivocally consented to the search. *See Tobin v. State*, No. 02-07-00145-CR, 2008 WL 3877207 at *3 (Tex. App.—Fort Worth Aug. 21, 2008, no pet.) (mem. op., not designated for publication) ("Voluntary consent is not shown by a mere acquiescence to a claim of lawful authority . . . ."); *see also Reyes-Perez v. State*, 45 S.W.3d 312, 319 (Tex. App.—Corpus Christi 2001, pet. ref'd) (holding officers' testimony that they communicated with appellant solely by "hand gestures" was insufficient to constitute clear and

8

convincing evidence of appellant's positive and unequivocal consent to the search).

In *Hamlin v. State*, the San Antonio Court of Appeals recently affirmed a trial court's denial of a motion to suppress evidence where the officer who requested Hamlin's consent to search testified that Hamlin replied, "Yeah, I don't have a problem with it."[7] No. 04–08-00257-CR, 2009 WL 856159, at *1 (Tex. App.—San Antonio April 1, 2009, no pet.) (mem. op., not designated for publication). The officer who requested and obtained Hamlin's consent further testified that he never does a pat-down search without first asking for consent. *Id.* at *1.

Unlike *Hamlin*, there is no testimony in this case by the officer who allegedly requested and obtained Appellant's unequivocable consent to search Appellant's person. Nor does the record reveal any evidence that Officer Parsons routinely requests consent before conducting a search. Moreover, unlike Appellant's one-word response in this case, Hamlin's response limited the uncertainty of his meaning and provided evidence of his positive and unequivocal consent to a search of his person.

---

[7] During trial, two officers gave similar testimony that one officer requested and obtained Hamlin's consent to search his person, initiated the search, and found a controlled substance in Hamlin's pocket. The other officer completed the search, finding more narcotics in Hamlin's sock.

Even giving almost total deference to the trial court's ruling and credibility determinations, the record before us does not reflect, by clear and convincing evidence, that Appellant unequivocally consented to a search of his person. Aside from Officer Stepp's conflicting testimony, the record is devoid of any evidence indicating Officer Parsons requested, and Appellant granted, consent to a search of Appellant's person.[8] We hold that the State failed to establish by clear and convincing evidence that Appellant positively and unequivocally consented to a search of his person. *See Allridge*, 850 S.W.2d at 493.

The trial court therefore abused its discretion by overruling Appellant's objection to admission of the evidence of the warrantless search and the items found as a result of the warrantless search. We sustain Appellant's sole point.

## Harm Analysis

Having found error, we must determine whether Appellant was harmed by the admission of the contraband. Because the error involved is of a constitutional magnitude,[9] we must reverse unless we can determine beyond a reasonable doubt that the error did not contribute to Appellant's conviction

---

[8] ... In *Tobin*, this Court considered the fact that the officer requesting the search never spoke to appellant with a commanding or authoritative voice; instead, the officer addressed appellant in a normal, conversational tone. 2008 WL 3877207 at *5. There is no similar evidence in this case.

[9] ... The error involved is constitutional because it implicates the right to be free of unreasonable searches and seizures under the federal and state constitutions. *See* U.S. Const. amend. IV, XIV; Tex. Const. art. I, § 9.

10

or punishment.  Tex. R. App. P. 44.2(a)[10]; *Hernandez v. State*, 60 S.W.3d 106, 108 (Tex. Crim. App. 2001).  In applying the "harmless error" test, the primary question is whether there is a "reasonable possibility" that the error might have contributed to the adjudication of guilt.  *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999).

Without the contraband, the State could not have successfully revoked Appellant's community supervision.[11]  Therefore, we cannot say, beyond a reasonable doubt, that the trial court's error did not contribute to the revocation of Appellant's community supervision.  *Reyes-Perez v. State*, 45 S.W.3d 312, 319–20 (Tex. App.—Corpus Christi 2001, pet. ref'd); *see Veal v. State*, 28 S.W.3d 832, 838 (Tex. App.—Beaumont 2000, no pet.); *Villalobos v. State*, 999 S.W.2d 132, 136 (Tex. App.—El Paso 1999, no pet.).  Thus, the trial court's error was harmful.

---

[10] Texas Rule of Appellate Procedure 44.2(a) provides:

Constitutional Error.  If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

[11] The State did not allege Appellant violated any other term or condition of his probation other than committing an offense against state or federal law.

11

IV. CONCLUSION

We sustain Appellant's point, reverse the trial court's judgment revoking Appellant's deferred adjudication community supervision, and remand to the trial court for proceedings consistent with this opinion.


ANNE GARDNER
JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  December 10, 2009

12