



## MEMORANDUM OPINION

Nos. 04-08-00238-CR &
04-08-00239-CR

Heriberto Arias **VALTIERRA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Kendall County, Texas
Trial Court Nos. 4612 & 4613
Honorable Stephen B. Ables, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:    Sandee Bryan Marion, Justice
Phylis J. Speedlin, Justice
Marialyn Barnard, Justice

Delivered and Filed:  November 17, 2010

AFFIRMED

After the trial court denied his motion to suppress, appellant Heriberto Arias Valtierra

pled guilty to the offense of possession of a controlled substance.  We affirm the trial court's

judgments.

## BACKGROUND

Police officers Pedro Moncada and John Rutledge learned from a third officer that a

thirteen-year-old runaway was living in an apartment in Boerne, Texas.  *Valtierra v. State*, 293

S.W.3d 697, 699 (Tex. App.—San Antonio 2009), *rev'd*, 310 S.W.3d 442 (Tex. Crim. App. 2010). The officers decided to conduct a "knock and talk" at the apartment. *Id*. The officers entered the apartment and, after asking questions about the runaway, Officer Moncada walked down a hallway toward a bathroom where the girl was taking a shower. *Id*. at 700. As Officer Moncada walked down the hallway toward the bathroom, he saw two men in a bedroom throwing items under a bed. *Id*. Upon seeing the men, Officer Moncada called Officer Rutledge and, after the men were directed out of the room and into the living room, Officer Rutledge entered the bedroom where he saw drug paraphernalia on a television stand. *Id*. This observation led officers to obtain a search warrant, which resulted in the discovery of cocaine, drug paraphernalia, and a stolen firearm. *Id*.

Valtierra was charged with possession of cocaine with intent to deliver. *Id*. He initially pled not guilty, but after his motion to suppress was denied by the trial court, Valtierra entered into a plea agreement whereby he pled guilty to possession of cocaine. *Id*. He was sentenced to five years in the Texas Department of Criminal Justice–Institutional Division. On original appeal to this court, Valtierra contended the trial court erred in denying his motion to suppress because: (1) police officers did not have consent to enter the apartment, proceed down the hallway toward the bathroom, or search the apartment; (2) there were neither exigent circumstances nor evidence to justify a protective sweep; (3) the evidence seized was not in plain view; and (4) the subsequent search warrant was not supported by probable cause. *Id*. In a published opinion, this court reversed the trial court's judgments and remanded the matter to the trial court for further proceedings. *Id*. at 699.

In reversing, we held that although police officers had consent to enter the apartment, neither had consent to proceed down the hallway. *Id*. at 702-03. We further held there were no

exigent circumstances or evidence to support a protective sweep in order to justify the officers' procession down the hallway. *Id*. at 703-05. Given the absence of valid consent, evidence of exigent circumstances, or evidence to support a protective sweep, we held Officer Moncada had no right to proceed down the hallway where he saw the men throwing items under a bed, which ultimately led to the discovery of contraband. *Id*. at 706. Accordingly, we held the trial court erred in denying Valtierra's motion to suppress. *Id*. However, on the State's petition for discretionary review, the court of criminal appeals held it was objectively reasonable for the officers to conclude that Valtierra's "general consent to come inside the apartment . . . included consent to walk down the open hallway to knock on the bathroom door." *Valtierra*, 310 S.W.3d at 451-52. The court of criminal appeals therefore reversed this court's judgments, and remanded the matter back to this court to determine whether Officer Rutledge's actions, i.e., his entry into, and "protective sweep" of, the bedroom, after Officer Moncada's observations during his valid "walk down the hallway" were reasonable under the Fourth Amendment. We hold they were, and now affirm the trial court's judgment.

### ANALYSIS

Because of our original disposition on the consent issue, Valtierra's first issue on appeal, we did not reach his second through fourth issues. Given the decision of the court of criminal appeals, we now review those remaining issues.

#### *Protective Sweep and Exigent Circumstances*

In his second issue in his original brief and in his supplemental brief on remand, Valtierra contends the trial court erred in denying his motion to suppress because neither exigent circumstances nor a protective sweep justified Officer Rutledge's entry into the bedroom. Officer Rutledge, at Officer Moncada's request, entered the bedroom after Officer Moncada

observed the two men throwing things under the bed and the men were ordered into the living room. Valtierra argues the "furtive gestures" observed by Officer Moncada were insufficient to justify entry into the bedroom under the Fourth Amendment, and therefore he was subjected to an illegal search. Valtierra claims that because the officers admitted they did not feel they were in danger or their safety was in jeopardy, and the apartment occupants were in the living room unarmed and cooperating, the search was unlawful under the Fourth Amendment. Because we find the evidence supports Officer Rutledge's entry into the bedroom as a protective sweep, we need not address whether it was also justified based on the existence of exigent circumstances.

As noted in our original opinion, a trial court's ruling on a motion to suppress is reviewed under a bifurcated standard of review. *Valtierra*, 293 S.W.3d at 700 (citing *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). In this type of review, we give almost total deference to a trial court's determination of historical facts, especially those that are based on an evaluation of credibility and demeanor. *Guzman*, 955 S.W.2d at 89. If a trial court makes express findings of fact, as it did here, we view the evidence in the light most favorable to the trial court's ruling, and determine whether the evidence supports the factual findings. *See State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). We review a trial court's application of the law to the facts de novo, as long as such questions do not turn on credibility and demeanor. *Guzman*, 955 S.W.2d at 89. As to the trial court's application of the law of search and seizure to the specific facts of a particular case, we use the de novo standard of review. *See Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007). We will sustain a trial court's ruling on a motion to suppress if it is "reasonably supported by the record and is correct on any theory of law applicable to the case." *State v.*

*Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). The court's ruling will be reversed only if it is outside the zone of reasonable disagreement. *Id*.

A protective sweep is a quick and limited search of premises conducted to protect the safety of police officers or others. *Maryland v. Buie*, 494 U.S. 325, 327 (1994); *Reasor v. State*, 12 S.W.3d 813, 815 (Tex. Crim. App. 2000). It is generally conducted incident to an arrest, but the absence of an arrest does not preclude a protective sweep, even one within a defendant's home. *United States v. Gould*, 364 F.3d 578, 584-86 (5th Cir. 2004). For a protective sweep to be valid, the police must not have entered or remained in the home illegally, and their presence in the home must be for valid law enforcement purposes. *Id*. at 587. A legitimate protective sweep must be supported "'by a reasonable, articulable suspicion . . . that the area to be swept harbors an individual posing a danger to'" those on the scene, and may be no more than a "cursory inspection of those spaces where a person may be found." *Id.* (quoting *Buie*, 494 U.S. at 1099-1100); *see Reasor*, 12 S.W.3d at 816-17. A protective sweep may last only long enough to dispel the reasonable suspicion of danger, and no longer than officers are justified in remaining in the home. *Gould*, 364 F.3d at 587 (citing *Buie*, 494 U.S. at 1099-1100); *Reasor*, 12 S.W.3d at 816. However, we must keep in mind that the Fourth Amendment bars only unreasonable searches and seizures. *Buie*, 494 U.S. at 331. Whether a search is unreasonable requires a balancing of an individual's privacy interest against the promotion of legitimate government interests. *Id*. Even without a warrant, a search may be permitted when a strong public interest exists for the search. *Id*.

At the hearing on the motion to suppress, and as found by the trial court, after the officers entered the apartment, a male individual walked out of one of the bedrooms at the back of the apartment. This individual was instructed to come to the living room and sit on the couch, which

he did. When Officer Moncada walked down the hallway to the bathroom, and to where the initial individual had exited, he saw two more individuals in a bedroom, sitting on the ground next to a bed. According to the officer, when these individuals saw him, they looked extremely nervous and engaged in "furtive movements," throwing unknown objects underneath the bed. Officer Moncada stated this was suspicious behavior, and further stated he could not tell what items were thrown under the bed. It was then that he asked Officer Rutledge to come down the hallway. The individuals were "pulled . . . out of the bedroom" and asked to sit in the living room, which they did. Officer Moncada said he called for Officer Rutledge because he did not know what the individuals had thrown under the bed, but it "could have been a weapon."

After removing the two individuals from the bedroom, Officer Moncada called for the alleged runaway, who finally came out of the bathroom, and she was placed in the living room as well. At that point, Officer Rutledge entered the bedroom. When Officer Rutledge entered the bedroom, Officer Moncada returned to the living room to watch the individuals seated on the couch; none of them were handcuffed at that time. Officer Moncada admitted that "at the beginning" he was not concerned that either he or Officer Rutledge would be attacked by the occupants of the apartment and did not fear for their safety, but when asked why Officer Rutledge entered the bedroom, he stated it was to "find out what they threw out and mak[e] sure there's no weapons, nobody else in the room." He also testified that at the time he entered the apartment, he thought there were only two people inside, and did not believe anyone else was in the apartment. This belief was obviously dispelled by the discovery of three additional male individuals. Officer Moncada expressed concern that he and Officer Rutledge were "out numbered" and he "didn't want to take any chances." He stated he wanted Officer Rutledge to enter the bedroom to check for weapons and other individuals. After Officer Rutledge entered

the bedroom, he ultimately came out and told Officer Moncada he found drug paraphernalia in plain view.

Officer Rutledge testified he went into the bedroom to "check for a weapon, see if anybody else [was] possibly in the room, because now we're outnumbered." The officer admitted there were no apparent safety issues when they entered the apartment; however, once they moved to the back of the apartment they "need[ed] to make sure that there is nobody else in that house. Somebody throw's [sic] something under the bed. It's now officer safety time." The officer stated he walked into the bedroom and first checked the closet, which was open. Finding no one in the closet, he walked over toward the bed and as he is walking, he sees a television stand and on top of the stand are two "1-by-1 Ziplock [sic] baggies containing what appeared . . . to be a controlled substance." One of the baggies contained "a large amount of powder," and "[t]he other one had some small just granules or say like leftovers." Officer Rutledge also saw a scale. He stated he did not have to move anything to see the baggies, and that he did not touch anything.

Officer Rutledge said he then went over to the bed and "retrieved what was thrown under the bed." He described it as a light bulb with the metal base broken off, wrapped in a napkin, with a straw and lighter next to it. Officer Rutledge stated that in his experience as a police officer, such items are used "to smoke a controlled substance." He further stated the light bulb appeared to have burned residue on it. After seeing the plastic baggies and retrieving the light bulb, Officer Rutledge walked into the living room and told Officer Moncada what he had seen, and that he intended to contact a supervisor. After failing to get a written consent to search, Officer Rutledge called an investigator and had him type up a search warrant. Later, the search

warrant arrived and officers searched the apartment, finding narcotics, drug paraphernalia, and a stolen firearm. *See Valtierra*, 293 S.W.3d at 700.

Viewing the evidence in the light most favorable to the trial court's denial of Valtierra's motion to suppress, we find the evidence supports the trial court's factual findings, and hold the trial court did not abuse its discretion in denying the motion. *See Kelly*, 204 S.W.3d at 818. The officers legally entered the apartment and Officer Moncada had consent to proceed down the hallway. *See Valtierra*, 210 S.W.3d at 451-52; *see also Gould*, 364 F.3d at 587. The officers' presence in the apartment was for a valid law enforcement purpose, i.e., trying to determine if an underage runaway was in the apartment. *See Gould*, 364 F.3d at 587. The protective sweep conducted by Officer Rutledge was supported by a reasonable, articulable suspicion that the bedroom might harbor another individual, and perhaps weapons, and was, according to his testimony, nothing more than a cursory inspection of those spaces where a person or weapon might be found. *See id.; Reasor*, 12 S.W.3d at 816-17. As Officer Rutledge stated, there might have been someone else in the apartment, and a weapon might have been thrown under the bed.

Moreover, when the intrusion of the cursory sweep is balanced against the officers' safety, a strong public interest, the sweep was neither unreasonable nor illegal. *See Buie*, 494 U.S. at 331. The officers had a strong interest in assuring themselves there were no other individuals in the house, individuals who might pose a danger and could unexpectedly launch an attack. *See id*. at 333. After all, when they first entered the apartment, Officer Moncada believed there were only two individuals inside. However, subsequent to their initial entry, the officers observed no less than three male individuals exiting and acting suspiciously in the bedrooms of the apartment. And, both officers feared being outnumbered.

Accordingly, we hold the protective sweep was justified by the evidence, and the trial court did not err in concluding a protective sweep was necessary for officer safety, and denying the motion to suppress based on Valtierra's challenge to the protective sweep. We therefore overrule Valtierra's second issue.

### *Plain View*

Valtierra next contends his motion to suppress was erroneously denied because the evidence seized was not located in plain view. More specifically, Valtierra asserts the baggies observed by Officer Rutledge on the television stand were not apparent contraband, and with regard to the light bulb, straw, and lighter, those items were only in the officer's view after he took certain affirmative action to view the items.

A warrantless search is per se illegal unless it falls within an exception to the warrant requirement. *Katz v. United States*, 389 U.S. 347, 357 (1967); *Walter v. State*, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000). The plain view doctrine is an exception to the warrant requirement, and allows an officer to seize evidence found in plain view. *Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971). To satisfy the exception to the warrant requirement based on the plain view doctrine, two elements must be established: (1) an officer must lawfully be on the premises, and (2) it must be immediately apparent to the officer that the items constitute evidence, meaning there is probable cause to associate the item with criminal activity. *Walter*, 28 S.W.3d at 541. Based on the first prong of the test, items in plain view may be seized when an officer is lawfully within an apartment and conducts a legal protective sweep. *See id.*

We hold the first prong of the plain view doctrine was satisfied because the officers were lawfully on the premises based on Valtierra's consent, *see Valtierra*, 310 S.W.3d at 451-51, and because we have determined Officer Rutledge observed the items while conducting a lawful

protective sweep. *See Walter*, 28 S.W.3d at 541. Officers Moncada and Rutledge were given consent to enter the apartment and walk down the hallway towards the bathroom. As discussed in Valtierra's second issue, Officer Rutledge was authorized to conduct a protective sweep of the bedroom. Accordingly, Officer Rutledge was lawfully in the bedroom when he observed the baggies and other items. *See Cardenas*, 115 S.W.3d at 62; *Reasor*, 12 S.W.3d at 817.

With regard to the seizure of the plastic baggies on top of the television stand, we hold it was immediately apparent to Officer Rutledge that these items constituted evidence of an illegal act. Valtierra relies heavily on *Sullivan v. State* for the assertion that plastic bags are not objects that are inherently dangerous, contraband, or stolen goods. *See* 626 S.W.2d 58, 60 (Tex. Crim. App. 1983). In *Sullivan*, the Texas Court of Criminal Appeals held a trial court erred in admitting two clear plastic bags containing methamphetamine seized by an officer under the plain view doctrine because the officer's testimony suggesting the items "may possibly be some kind of narcotic" was no more than a mere conclusion and fell short of the State's burden to satisfy the immediately apparent prong of the plain view doctrine. *Id.*

Here, Officer Rutledge testified that based on his training and prior experience as a peace officer, one-by-one inch plastic baggies are highly likely to be evidence of a controlled substance, especially when they contain powdery substances or residue. Officer Rutledge testified one of the baggies on top of the television stand had a large amount of white powder in it, and smaller bag contained small granules, possibly "leftovers." In addition, Officer Moncada testified the two men in the bedroom made furtive movements when he looked in the bedroom. *See id.* at 60 (indicating that furtive movements by defendant can lead officer to believe plastic baggies contain evidence of crime). Accordingly, the testimony before the trial court provided sufficient evidence for the court to conclude Officer Rutledge provided more than mere

conclusions, and possessed sufficient experience and knowledge to determine the plastic baggies likely contained a controlled substance, satisfying the immediately apparent prong. *See id.* at 59-60. Therefore, with regard to the plastic bags, the evidence supports the trial court's express fact finding that Officer Rutledge seized items in plain view. *See Kelly*, 204 S.W.3d at 818-19.

There is also sufficient evidence to support the trial court's finding that the other items seized by Officer Rutledge during the protective sweep were in plain view. As previously described, the other items included a broken light bulb, as well as a cut straw and lighter, which were under the bed. After checking the closet in the bedroom for other individuals, Officer Rutledge testified that based on Officer Moncada's statements regarding items thrown under the bed, he looked around the bed to determine if a weapon had been thrown under the bed. Officer Rutledge stated the bed was very low to the ground, and knowing that a person could not be hiding under the bed, he did not bend down to conduct a protective sweep under the bed. However, he testified that without taking any action, he could see a broken light bulb and napkin near the back corner of the bed because the bed did not have a bed skirt or duvet cover. He also specifically stated that he "didn't search under the bed. It was in plain – you could see – what was thrown underneath the bed in plain view." Admittedly, at one point, Officer Rutledge testified he had to open the napkin to see the broken light bulb as well as the straw and lighter, but this conflicted with his other statements that he could see the items without any affirmative action. As the sole trier of fact and judge of the credibility of the witnesses and weight given to their testimony, the trial court was entitled to believe the portion of Officer Rutledge's testimony indicating he saw the light bulb, napkin, straw, and lighter under the bed without bending down or taking affirmative action to open the napkin. *See Ross*, 32 S.W.3d at 855. Accordingly, we

hold Officer Rutledge's testimony is sufficient to support the seizure of the broken light bulb and the accompanying items. We therefore overrule Valtierra's third issue.

### *Search Warrant*

Finally, Valtierra contends the trial court erred in denying his motion to suppress the search warrant and arrest warrant.[1] Valtierra argues the information in the affidavit supporting the search warrant was based on a warrantless entry of a residence and illegal protective sweep conducted by Officer Rutledge. He also asserts the affidavit contains contradictory testimony from Officer Moncada regarding whether he had permission to enter and walk through the premises. Finally, because the affidavit contains no information as to the reliability and credibility of the affiant, Valtierra contends the affidavit contains conclusory statements and fails to establish probable cause to search the residence.

It is well-settled that a search warrant must be based on probable cause. *Cassias v. State*, 719 S.W.2d 585, 587 (Tex. Crim. App. 1986). Probable cause to support the issuance of a search warrant exists when the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises at the time the warrant is issued. *Arrick v. State*, 107 S.W.3d 710, 715 (Tex. App.—Austin 2003, pet. ref'd). We determine the sufficiency of a search warrant affidavit by examining the totality of the circumstances, and we review only facts found within the four corners of the affidavit, and will not go behind the affidavit to impeach the facts therein. *See id.* at 715-16; *see also Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004), *superseded on other grounds by*, TEX. CODE CRIM. PROC. art. 37.071 § 2(e)(2)(B) (West Supp. 2010). Accordingly, we give great deference to the issuing

---

[1] Although Valtierra's summary of his argument contests the validity of both the search and arrest warrants, his analysis focuses exclusively on the search warrant. In response, the State also addresses the validity of only the search warrant. Therefore, given Valtierra's absence of argument with regard to the arrest warrant, our review is limited to the validity of the search warrant.

magistrate's probable cause determination, and will sustain the determination "so long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing." *Arrick*, 107 S.W.3d at 716.

Here, the issuance of the search warrant is based largely upon information provided by Officers Moncada and Rutledge to the affiant, Detective Tom Smith. "Where facts and circumstances within the knowledge of a police officer, arising from a reasonably trustworthy source, would warrant a person of reasonable caution in the belief that items of contraband or evidence of a crime may presently be found in a specified place, there is probable cause to issue a warrant to search that place." *Davis v. State*, 27 S.W.3d 664, 668 (Tex. App.—Waco 2003, pet ref'd). In this case, the affidavit provides the following facts: (1) a number of plastic bags commonly used for the transport and sale of narcotics were found in the home; (2) some of the bags contained a white powdery residue; (3) drug paraphernalia, specifically a light bulb, straw, and scale were found in the home; and (4) the officers were investigating a report of an underage female runaway staying at the apartment. In addition, the search warrant was issued less than twenty-four hours after Officers Moncada and Rutledge arrived on the premises. Given the information in the supporting affidavit, we hold the magistrate had a substantial basis for concluding that probable cause existed for the issuance of a search warrant. *See Arrick*, 107 S.W.3d at 716. Accordingly, Valtierra's fourth issue is without merit, and is overruled.

CONCLUSION

Based upon the decision of the court of criminal appeals, and our subsequent review of Valtierra's remaining issues on remand, we hold the trial court did not err in denying the motion to suppress, and we affirm the trial court's judgment.

Marialyn Barnard, Justice

Do Not Publish