**Order, Concurring Opinion on Denial of En Banc Relief, and Dissenting Opinions From Denial of En Banc Relief filed August 3, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-18-00886-CR

---

### RAMON RIOS, III, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

### On Appeal from the 232nd District Court
### Harris County, Texas
### Trial Court Cause No. 1491213

---

### CONCURRING OPINION ON DENIAL OF EN BANC RELIEF

I concur in the denial of en banc relief and write separately. Military style "no-knock warrants" have been held to be unreasonable in factual scenarios similar to those in this case[1]. The reasonableness of the no-knock portion of this warrant was

---

[1] As to search warrants, "[I]n the absence of express statutory authorization, no-knock search warrants are without legal effect in Florida." *State v. Bamber*, 630 So.2d 1048, 1051 (Fla. 1994).

never raised, not briefed, and is therefore not before us. The panel opinion follows well-established precedent of the United States Supreme Court and Texas Court of Criminal Appeals, and I agree with the majority of this Court in denying en banc relief.

## FACTS

This case involves a "high-risk arrest" of a suspected narcotics dealer with two outstanding warrants for murder who, at the time of the execution of the arrest warrant, was in possession of guns and illegal drugs. The Houston Police High Risk Operations Unit ("SWAT") breached the house to arrest appellant while executing a "no knock" arrest warrant. Unchallenged by appellant was the initial and violent "breaching" of the residence, which started when the SWAT team pushed down the outside gate with an armored police vehicle, surrounded the house with approximately twenty police officers, who broke in the doors and windows, then pointed guns into the residence, and finally ordered appellant to the ground while he was still inside the residence. There he remained until "later" when officers "eventually" ordered him to crawl out to the front porch where he was "secured" first by being handcuffed, and then by placing him into a nearby police vehicle, while the SWAT team continued to hold their position outside the house.

Having secured appellant, SWAT then performed a protective sweep. They first secured the residence room by room with multiple officers in each room, presumably with weapons drawn. (First, "two guys will go in . . . once they start clearing that room and they need to move on to the next room, then the next person goes in." It is "slow and methodical."). Officer Alexander usually goes in, "like, three or four guys back." Alexander testified he was "not looking for guns but "just looking strictly for people." As the lead officer, Alexander will sweep each room, checking "underneath beds, looking in closets, looking in crawl spaces." Only after

2

Officer Alexander completed the protective sweep was everyone asked to "walk out." It was during this "initial" sweep "as soon as we went inside the residence" Officer Alexander observed what he suspected to be (and was later confirmed to be) bricks of illegal drugs. Although Officer Alexander may not have been the only officer to observe the illegal drugs, only his observations were cited in the affidavit supporting the subsequent search warrant reviewed and granted by a Harris County Criminal District Court Judge.

At trial, before a different Harris County Criminal District Court Judge, appellant, seeking to exclude evidence obtained from inside the house, made arguments challenging the admissibility of the seized evidence. First, claiming the arrest was made outside the house, appellant argues the protective sweep and any evidence observed must be excluded as fruits of an illegal sweep. Second, even if the intrusion was legal as a protective sweep, the efforts of Officer Alexander constituted a second, more thorough "search" and therefore the evidence must be excluded as beyond that necessary to secure the legitimate safety concerns of the officers, which was presumably accomplished by the officers who went in with weapons drawn.

Appellant was provided by hearing an opportunity to develop the facts. The trial court found the sweep reasonable under the circumstances and thus held it did not violate appellant's Fourth Amendment rights. The trial court denied appellant's motion to suppress. Appellant was tried, convicted, and sentenced to 18 years in the Institutional Division of the Texas Department of Criminal Justice.

Appellant appealed his conviction to this Court, and the majority of a panel of three Justices affirmed the reasonable inferences of the magistrate and the factual findings of the trial court. One Justice on the panel dissented without opinion. Appellant then sought and was granted en banc review and an en banc oral argument

3

was granted. At each stage, appellant challenged the Constitutionality of the protective sweep and separately Officer Alexander's portion of the sweep as a separate "search."

## I. The Arrest occurred in the residence.

The United States Supreme Court has established the Fourth Amendment applies whenever a person is seized and restrained of their freedom to walk away. *See Terry v. Ohio*, 392 U.S. 1, 16, 88 S. Ct. 1868, 1877, 20 L. Ed. 2d 889 (1968). "It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Id*. In this case appellant was seized when he was ordered to the floor of the residence.

The Supreme Court has rejected unnecessarily strict restrictions on police in determining when a protective sweep is justified. *Maryland v. Buie*, 494 U.S. 325, 336–37, 110 S. Ct. 1093, 1099–100, 108 L. Ed. 2d 276 (1990) ("We conclude that by requiring a protective sweep to be justified by probable cause to believe that a serious and demonstrable potentiality for danger existed, the Court of Appeals [] applied an unnecessarily strict Fourth Amendment standard. The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene.").

## II. Manor and Means of the Protective Sweep

Appellant argues, even if the protective sweep was reasonable under the circumstances, the securing portion of the operation should have concluded the protective nature of the sweep and thus Officer Alexander's observations were the result of an improper "secondary" search. However, the testimony indicated Officer Alexander entered the premises contemporaneously with the other officers.

Accordingly, appellant's arguments relate to the manner and means of the protective sweep and fail to appreciate the apparent safety concerns of police and their need to perform the protective sweep safely under circumstances already deemed to be a "high risk operation."

Having addressed, at least arguably, the legal basis for officers to perform a protective sweep of the house I move to the more troubling procedural aspect of this case, whether en banc reconsideration should have been granted at all.

## III. Neither appellant nor the dissents follow the en banc standard required by the Rules of Appellate Procedure.

"En banc consideration of a case is not favored and should not be ordered unless necessary to secure or maintain uniformity of the court's decisions or unless extraordinary circumstances require en banc consideration." Tex. R. App P. 41.2(c). As stated in *Thompson*, "[t]he standard for en banc consideration is not whether a majority of the en banc court may disagree with all or a part of a panel opinion. Neither is an assertion that an issue is 'important' sufficient. Rather, when there is no conflict among panel decisions, the existence of 'extraordinary circumstances' is required before en banc consideration may be ordered. Here, en banc consideration is not 'necessary' to maintain uniformity with prior [Fourteenth] Court of Appeals decisions. Moreover, the panel's limited holding . . . does not amount to an 'extraordinary circumstance' which 'requires' en banc consideration." *Thompson v. State*, 89 S.W.3d 843, 856 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (Jennings, J., concurring in denial of en banc consideration) (internal citation omitted).

Here, en banc relief is not necessary to maintain uniformity with prior Fourteenth Court of Appeals decisions. Neither appellant nor the dissents identified a prior Fourteenth Court decision that conflicts with the panel decision in this case.

5

Moreover, the panel's holding, which is limited to the facts and circumstances of this case, does not amount to an "extraordinary circumstance" requiring en banc consideration.

Appellant and the dissent assert the panel opinion conflicts with the opinion from the Court of Criminal Appeals in *Reasor v. State*, 12 S.W.3d 813 (Tex. Crim. App. 2000). The instant case is distinguishable from *Reasor* in two ways. First, Reasor's arrest occurred exclusively outside the residence after Reasor had driven home. *Id.* at 815. Officers entered the residence and obtained consent after the arrest occurred in the driveway. *Id.* Second, unlike the instant case, not only did the officers fail to articulate facts supporting any concern that the residence harbored any threat, one officer testified he considered Reasor's driveway "a safe place for him, his fellow officers, and the appellant." *Id.* at 817.

**IV.   In asserting the panel majority erred in its analysis, the dissents abandon the constitutional role of an appellate court to give due deference to the factfinder's credibility determinations.**

"The touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S. Ct. 330, 332, 54 L. Ed. 2d 331 (1977) (quoting *Terry*, 392 U.S. at 19, 88 S.Ct. at 1878). Reasonableness, of course, depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607 (1975)

A protective sweep is an exception to the warrant requirement. *Reasor*, 12 S.W.3d at 815–16. A protective sweep is a "quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others."

*Id*. at 815 (quoting *Buie*, 494 U.S. at 327, 110 S. Ct. at 1093). A protective sweep is permitted when the officer possesses a reasonable belief that the area to be swept harbors an individual posing a danger to those on the scene. *Buie*, 494 U.S. at 337, 110 S.Ct. at 1093; *Reasor*, 12 S.W.3d at 816. Officers may not conduct a protective sweep as a matter of right. *Buie*, 494 U.S. at 336, 110 S.Ct. at 1093; *Reasor*, 12 S.W.3d at 816 ("[T]he protective sweep is not an automatic right police possess when making an in-home arrest."). To the contrary, a protective sweep is permitted only when "justified by a reasonable, articulable suspicion that the house is harboring a person posing a danger to those on the arrest scene." *Buie*, 494 U.S. at 336, 110 S.Ct. at 1093; *Reasor*, 12 S.W.3d at 816.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). First, we afford almost total deference to the trial judge's findings of historical fact as well as mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013). The trial judge is the sole judge of a witness's credibility and the weight given to the witness's testimony. *Ex parte Moore*, 395 S.W.3d 152, 158 (Tex. Crim. App. 2013).

The trial court and the majority panel opinion concluded that the protective sweep in this case was justified by a reasonable, articulable suspicion that the house was harboring a person posing a danger to those at the scene.

In addressing the trial court's denial of appellant's motion to suppress, the dissent argues (1) there were no specific and articulable facts that appellant's home harbored an individual who posed a danger; (2) officers had completed the arrest and departed the premises before conducting the protective sweep; and (3) the panel majority relied on "materially incorrect" and "irrelevant" facts.

7

To the contrary, the record reflects the following specific and articulable facts from which the trial court could have determined the protective sweep was justified:

- Before executing the arrest warrant, officers knew a woman and at least one child lived in the house, but their intelligence and surveillance led them to believe there would be weapons and an "unknown number of people that were going to be at the residence."

- Officers avoided using "explosive tools," such as flash-bang grenades when executing the warrant because they did not know whether children would be in the house.

- At the time law enforcement breached the house they did not know who was in the house and could not observe each room of the house.

- After officers announced their arrival, appellant came out to the front porch of the house.

- As Officer Alexander was removing appellant from the front porch, he looked into the front living room and saw "a rifle case and a rifle sitting on top of it or there close."

- Officer Alexander spent 10 to 15 minutes escorting appellant to a patrol car and asking appellant if any persons or dogs were inside the home.

- In Officer Alexander's experience, he had gone to similar locations and found other occupants in the home and Officer Alexander did not know whether other persons were in the house.

- While officers try to determine who is living at a residence, the information does not always turn out to be accurate.

- Officer Alexander further testified, "Even though there's a particular number of residents that live there, that doesn't mean that that's necessarily what's there at the time that I serve the warrant."

- Officer Alexander admitted he did not have information that other people were in the home, but testified he had no way to know that until he went inside the house.

These and other facts were found sufficient by the majority panel opinion to

support the trial court's decision to deny the motion to suppress. Although appellant had been removed from the home, there were approximately twenty officers at the scene at the time of appellant's arrest. The above facts in addition to those recited in the panel opinion were sufficient to establish that individuals may have been in the house and those individuals could have posed a danger to the officers at the scene.

In quoting Officer Alexander's testimony, the dissent quotes, "as far as [they] knew, there was no one else there." Dissenting op. at p. 12. In the same sentence of his testimony, however, Officer Alexander testified, "but I didn't 100 percent know that." Officer Alexander further testified that although appellant was placed in a patrol car, the house was open and the officers outside the house were not safe until the house was "cleared."

Both appellant and the dissent fail to give deference to the trial court's ruling by considering the evidence in the light most favorable to that ruling. *See Romano v. State*, 610 S.W.3d 30, 33–34 (Tex. Crim. App. 2020) (court of appeals erred in reversing appellant's conviction because court of appeals failed to give proper deference to the factfinder's findings); *see also* Tex. Const. art. V, § 6. Contrary to the dissent's assertions, the record reflects specific and articulable facts that appellant's home harbored an individual or individuals who posed a danger to the officers at the arrest scene. Inconsistencies or contradictions in a witness's testimony do not destroy that testimony as a matter of law. *McDonald v. State*, 462 S.W.2d 40, 41 (Tex. Crim. App. 1970).

As to the panel majority's holding on the plain-view doctrine, Officer Alexander testified that, "the first narcotics I saw were in the red bag right outside the back door." Officers went into the backyard because there was an out-building that might have had someone living in it. The back door was "already open, and the bag [was] sitting right there right outside the back door." The bag was open and

9

contained "black bags wrapped up that look like kilos of narcotics." Officer Alexander did not open the bags but testified, according to his training and experience, the bags looked like they contained narcotics. *See Wiede v. State*, 214 S.W.3d 17, 25 (Tex. Crim. App. 2007) ("[T]he training, knowledge, and experience of law enforcement officials is taken into consideration."). Again, the dissent has chosen to substitute its credibility determination for that of the magistrate and the trial court.

The simple fact is that whether a protective sweep was justified and whether drugs were appropriately seized are fact-intensive questions. These decisions, by their nature, must be based on the facts of each particular case, and the en banc Court has appropriately given deference to the panel's judgment.

## CONCLUSION

The panel majority opinion does not in any way deviate from precedent of this Court, and its limited holding on the unique facts of this case does not amount to "extraordinary circumstances" requiring en banc relief. The panel opinion objectively followed the rule of law. Even if other members of this Court disagree with the panel's decision, it was the panel's decision to make. I therefore concur in the denial of en banc relief in this case.


/s/     Jerry Zimmerer
        Justice


En Banc Court consists of Chief Justice Christopher and Justices Wise, Jewell, Bourliot, Zimmerer, Spain, Hassan, Poissant, and Wilson. Chief Justice Christopher and Justices Wise, Jewell, Zimmerer, and Wilson join in this order. Justices Bourliot,

10

Spain, Hassan, and Poissant would have the en banc court decide this case. Justice Zimmerer authored a Concurring Opinion On Denial of En Banc Relief. Justice Hassan authored a Dissenting Opinion From Denial of En Banc Relief, in which Justices Bourliot and Spain joined. Justice Poissant authored a Dissenting Opinion From Denial of En Banc Relief.

Publish — Tex. R. App. P. 47.2(b).