In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-24-00056-CR
_____

### THE STATE OF TEXAS, Appellant

### V.

### WILLIAM ALEXANDER IVY, Appellee

**On Appeal from the 258th District Court**
**Polk County, Texas**
**Trial Cause No. 27,589**

## MEMORANDUM OPINION

Appellee William Alexander Ivy was indicted for possession of a controlled substance. *See* Tex. Health & Safety Code Ann. § 481.115(b). Ivy filed a motion to suppress evidence obtained during a warrantless search of his residence. After a pretrial hearing, the trial court granted Ivy's motion to suppress and entered findings of fact and conclusions of law, after which the State filed this appeal. Because we conclude the trial court was within its discretion to find that the State failed to meet its burden to prove Ivy voluntarily consented to the search, we affirm.

1

## Background

Ivy filed a Motion to Suppress Evidence asserting his detention and subsequent arrest were in violation of the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States and Chapters 14 and 38 of the Texas Code of Criminal Procedure. The motion claims law enforcement officers entered his home without a search warrant or signed consent to search, that there was no probable cause or need to search the house, and that there were no emergency or exigent circumstances or other exceptions to the search warrant requirement. According to the motion, deputies stated they asked Ivy for permission to search the trailer and the encounter was captured on police bodycam video, but the State was unable to produce the video.

At the hearing on the motion, the State called Lieutenant Anthony Lowrie with the Polk County Sheriff's Office narcotics' division to testify. Lowrie testified that on May 21, 2019, he was looking for an individual named Lacey England because she had several drug warrants.[1] He received information that England could be found at Ivy's residence. When he and other officers arrived at Ivy's location, they found a travel trailer with a few people sitting outside. Lowrie testified he knocked on the travel trailer door, and when Ivy answered, Lowrie asked him if

---

[1]The reporter's record refers to the individual as Lacey England, but the clerk's record refers to the individual as Lacey Eaglin.

2

England was in the house, to which Ivy responded "yes." According to Lowrie, Ivy then stepped out and England was located on the left inside area of the travel trailer. England was placed under arrest.

Lowrie testified he then asked Ivy if anything illegal was in the house, to which Ivy replied "no," after which Lowrie asked Ivy for consent to search, and Ivy gave consent. Lowrie testified it was clear to him that Ivy understood that he had the right to say no. Lowrie explained that he has known Ivy for a while, and he has dealt with Ivy on several occasions where Ivy has given Lowrie consent to search either his vehicle or residence. Lowrie said he believed Ivy understood that when he was giving consent, it was knowing and voluntary and that Ivy understood he had the right not to consent.

Lowrie then searched the trailer based on Ivy's consent. Lowrie found four syringes in the kitchen/dining area and a foil pipe, a glass meth pipe, and a baggy with a crystal-like substance in the trash can by the front door. Although Lowrie had a bodycam that was functional and should have been downloaded, the video could not be located. According to Lowrie, the loss of the video was not due to any fault on the part of the State or the police department. Lowrie testified the video was not intentionally destroyed nor was anything done to prevent the video from being used as evidence. Lowrie said he cooperated fully with the IT department in an attempt to retrieve the video. Lowrie testified he did not know when his bodycam footage

went missing, but multiple computers were hit with malware, servers crashed, and video systems were switched, which resulted in a lot of lost videos.

On cross-examination, Lowrie testified he did not have a search warrant for Ivy's trailer, and he did not have Ivy sign a written consent form to search the trailer, "[b]ecause it – it was on body cam[.]" Lowrie acknowledged that another officer, Officer White, was also wearing a bodycam, and although it did not capture Ivy's consent to search the trailer, it has "talk about consent on that. There's not with the – him [Ivy] saying it."[2] Lowrie testified he did not give Ivy a *Miranda* warning at that time because he was not under custodial interrogation and was free to leave. He also stated he knew the trailer was Ivy's residence because Ivy told him it was his trailer and all of Ivy's belongings were there.

After the hearing, the trial court granted Ivy's motion to suppress. The trial court then entered Findings of Facts and Conclusions of Law, and the State filed this appeal. In its sole issue, the State argues the trial court erred in suppressing the evidence that was obtained in the search of Ivy's trailer because the search was executed based on Ivy's voluntary consent.

Analysis

The Fourth Amendment guarantees the right of the people to be "secure in their persons, houses, papers, and effects, against unreasonable searches and

---

[2]Ivy's attorney was provided a copy of White's bodycam video.

4

seizures[.]" U.S. CONST. amend. IV. When a defendant moves to suppress evidence obtained during a police search that was allegedly conducted in violation of the Fourth Amendment, the defendant bears the initial burden to produce evidence rebutting the presumption of proper police conduct. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). "A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant." *Id.* This is so because "a search conducted without a warrant issued upon probable cause is '*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Reasor v. State*, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). Upon a showing the search was conducted without a warrant, the burden shifts to the State to prove the applicability of an exception to the rule against warrantless searches. *See Neal v. State*, 256 S.W.3d 264, 282 (Tex. Crim. App. 2008) ("Evidence seized by the police without a warrant may be admitted only if an exception to the Fourth Amendment's warrant requirement applies."). One such exception is a defendant's voluntary consent to the search. *Reasor*, 12 S.W.3d at 817.

"Under Texas law, the State must prove voluntary consent by clear and convincing evidence." *State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011). Clear and convincing evidence means "that degree of proof which will produce in the [factfinder's] mind a firm belief as to the truth of the allegation sought

to be established. This is an intermediate standard, falling between the preponderance of the evidence standard and the reasonable doubt standard." *Lackey v. State*, 819 S.W.2d 111, 117 (Tex. Crim. App. 1989).

The State must prove the defendant's consent was "positive and unequivocal and there must not be duress or coercion, actual or implied." *Meeks v. State*, 692 S.W.2d 504, 509 (Tex. Crim. App. 1985). To be valid, a suspect's consent must be "freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). Mere acquiescence to a claim of lawful authority cannot constitute valid consent. *Id.* at 548-59. An officer's testimony that consent was given voluntarily and without coercion may be sufficient to prove voluntariness of the consent. *See Martinez v. State*, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000). Nevertheless, "the question of whether consent to a search was in fact 'voluntary' or was the product of duress or coercion, express, or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth*, 412 U.S. at 227; *see also Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010).

"By looking at the circumstances leading up to the search, the reaction of the accused to pressure, and any other factor deemed relevant, a trial court can determine whether the statement of consent was given voluntarily." *Reasor*, 12 S.W.3d at 818. The trial court should consider various factors, including: the consenting person's age, education, and intelligence; any constitutional advice given, such as whether

6

the consenting person had the option to refuse consent; whether the consenting person was in custody or restrained at the time, and the length of any such detention; and whether weapons were drawn. *See id.* (citing *Schneckloth*, 412 U.S. at 226). Although it is not necessary for the State to prove the suspect was informed of the right to withhold consent, it is one of the circumstances the trial court should consider. *See Meeks*, 692 S.W.2d at 510. "The showing that a suspect has been warned that he does not have to consent to the search and has a right to refuse is of evidentiary value in determining whether a valid consent was given." *Allridge v. State*, 850 S.W.2d 471, 493 (Tex. Crim. App. 1991).

At a hearing on a motion to suppress, the trial court is the exclusive trier of fact and judge of the credibility of the witnesses. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). A trial court may choose to believe or to disbelieve any part of a witness's testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Given the fact-intensive nature of the issues surrounding voluntary consent, an appellate court will not disturb a trial court's finding regarding voluntariness "unless it is clearly erroneous." *Meekins v. State*, 340 S.W.3d 454, 460 (Tex. Crim. App. 2011). Appellate review is facilitated when, as in this case, the trial court issues findings of fact and conclusions of law. *See id.* at 465. Express findings are important because "the appellate court does not engage in its own factual review

but decides whether the trial judge's fact findings are supported by the record. If the trial court's findings of fact are supported by the record, an appellate court is not at liberty to disturb them, and on appellate review, we address only the question of whether the trial court improperly applied the law to the facts." *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).

We review a trial court's ruling on a motion to suppress using a bifurcated standard of review. *State v. Kerwick*, 393 S.W.3d 270, 273 (Tex. Crim. App. 2013). We give almost total deference to the trial court's determination of historical facts and mixed questions of law and fact that rely on credibility determinations if they are supported by the record. *Id.*; *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). "[T]he prevailing party is entitled to 'the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.'" *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011) (quoting *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008)). However, we review *de novo* questions of law and mixed questions of law and fact that do not rely on credibility determinations. *Kerwick*, 393 S.W.3d at 273. We must uphold the trial court's ruling on a motion to suppress if the ruling was supported by the record and was correct under any theory of law applicable to the case. *Armendariz v. State*, 123 S.W.3d 401,

404 (Tex. Crim. App. 2003). We may reverse only when the decision is arbitrary, unreasonable, or outside the zone of reasonable disagreement. *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018).

During the suppression hearing in this case, the State called one witness, Lieutenant Lowrie. Because Lt. Lowrie agreed he did not have a warrant to search Ivy's travel trailer, the State bore the burden to establish by clear and convincing evidence that Ivy positively, unequivocally and voluntarily consented to the search, without coercion or duress. The following is the entirety of Lt. Lowrie's testimony regarding the conversation in which Ivy allegedly consented to the search of his trailer:

Q.     Okay. So anyway, one way or the other, what did you ask?

A.     I asked for consent to sear -- well, I asked him if anything illegal was in the house, which he had replied no.

Q.     Okay.

A.     Asked him consent to search, which he did give consent to search.

Q.     How did you ask him for the consent?

A.     I asked him word of mouth.

Q.     Okay. Did you ask him, in other words, did he understand – by the way you asked him, was it clear that he understood that he had the right to say no?

A.    Yes. Like I said, I've known Mr. Ivy for a while. I've dealt with Mr. Ivy on several occasions where he's given me consent many, many times to search either a vehicle or the residence he was in.

Q.    Okay. So you knew that it -- it is your – is it your belief that he understood that when he was giving consent, it was knowing and voluntary as to what he was consenting to?

A.    Yes, sir.

Q.    And that he had the right not to consent?

A.    Correct.

Much was left unsaid. Although we know how Lt. Lowrie asked for consent (word-of-mouth), he did not divulge what was said or how it was said so that the trial court could fulfill its responsibility to evaluate whether Ivy's consent was provided in response to coercion or duress. Nothing was said about Ivy's response other than that "he did give consent to search." Lt. Lowrie did not indicate whether Ivy responded verbally, but if he did, we do not know what he said or how he said it, and if he responded non-verbally, we do not know what gestures were made that led Lt. Lowrie to conclude that Ivy was giving his consent. We do not know whether Ivy was given time to think about Lt. Lowrie's request. Lt. Lowrie did not provide the trial court any information to evaluate whether Ivy's provision of consent was positive and unequivocal or tentative and ambiguous. Aside from Lt. Lowrie's bare statement that he asked for and obtained Ivy's consent, we know almost nothing about the content and character of the communication between the two men.

10

We also know very little about the circumstances that are relevant to the voluntariness of Ivy's consent because the State provided no evidence of several factors the trial court was supposed to consider. For example, there was no evidence regarding Ivy's age, education, and intelligence, whether any constitutional advice was given, whether Ivy was told (on this occasion or any prior occasion) that he had the option to refuse consent, or whether weapons were drawn. *See Reasor*, 12 S.W.3d at 818. Although the State was not required to prove Ivy was told that he had a right to refuse consent, such evidence is of value in evaluating the validity of consent. *Allridge*, 850 S.W.2d at 493. Instead of testifying that Ivy was so informed, Lt. Lowrie testified regarding his "belief" that Ivy must have understood. Although the trial court found Lt. Lowrie to be a credible witness, the trial court was also tasked with deciding how much weight to assign to his testimony. *See Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018) ("At a motion to suppress hearing, the trial judge is the sole trier of fact and judge of credibility of witnesses and the weight to be given to their testimony.").

The trial court provided some insight into its evaluation of the weight it assigned to Lt. Lowrie's testimony in its Conclusion of Law 13 which states, "Lieutenant Lowrie merely assumed that Ivy's acquiescence in a search of the trailer was based on an adequate understanding by Ivy of the law of consent." We consider Conclusion 13 to be a finding on a mixed question of law and fact that depended on

11

the trial court's evaluations of the credibility and weightiness of the evidence. *See State v. Ambrose*, 487 S.W.3d 587, 597 (Tex. Crim. App. 2016) ("[R]egardless of how a trial court labels its findings of fact and conclusions of law, an appellate court must examine the substance of the findings and conclusions and treat them by their substance rather than by their label."). Accordingly, we must give this finding almost total deference so long as it is supported by the record, viewing the evidence in the light most favorable to the trial court's ruling. *See Kerwick*, 393 S.W.3d at 273.

According to Lt. Lowrie's testimony, his "belief" was based not on any words that were used during the conversation, but on past interactions with Ivy in which he purportedly consented to other searches. Because nothing was said about those prior interactions, we do not know whether Lt. Lowrie told Ivy on those occasions that he had the right to withhold consent, nor do we know whether the prior interactions were sufficiently recent to raise an inference that Ivy still understood his right to withhold consent on the occasion in question. The trial court was not provided any information about any of the circumstances of the prior searches so that the trial court could determine whether Ivy's previous provisions of consent were voluntary, nor did Lt. Lowrie offer an opinion that they were. He simply concluded that since Ivy had consented to searches in the past, he must have knowingly and voluntarily consented to this search and must have understood that he had a right to withhold

consent. Based on this record, the trial court was within its discretion to conclude that Lt. Lowrie's "belief" about Ivy's understanding was merely an assumption.

The trial court's Findings of Fact 35 indicates, "There was no specific testimony on the chain of custody of the body cam video, or clear testimony that the video was ever downloaded into any system, only that a witness who was not called to testify, Jacob Hopper, was 'the one that did the case. His computer was one of the computers that was hit by the spyware and is - was locked.'" Finding 36 states, "No written records concerning the chain of custody of the body camera recording were offered by the State." Finding of Fact 51 states, "Lowrie admitted that another officer, Victor White, was wearing a body cam. When asked by the defense whether there was any evidence on White's video cam to show that Ivy gave his consent to search the trailer, he answered, 'yes, there is talk about the consent on that. There's not with the - him [Ivy] saying it.' The State did not call Officer White, or try to present any bodycam video from White into evidence."

These findings are supported by the record. Lt. Lowrie testified he did not obtain written consent from Ivy because their conversation was being recorded on his body camera. The State knew prior to the hearing that the recording could not be retrieved, yet the State did not call Officer White to testify, nor did it call Officer Hopper or a witness from the IT department to explain what happened or to describe any efforts to locate the video. The State relied solely on Lt. Lowrie's testimony. We

13

acknowledge that "[a]n officer's testimony that consent was voluntarily given can be sufficient evidence to prove the voluntariness of the consent." *Kelly v. State*, 331 S.W.3d 541, 547 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (citing *Martinez v. State*, 17 S.W.3d 677, 683 (Tex. Crim. App. 2000)). But we also acknowledge that "[t]he trial court must look at the totality of the circumstances surrounding the statement of consent to determine whether consent was given voluntarily." *Id.* As previously noted, Lt. Lowrie's testimony provided little information about the actual content of his conversation with Ivy and the surrounding circumstances, focusing instead on Lt. Lowrie's "belief" that Ivy understood he was voluntarily and knowingly consenting to a search of his trailer. While Lt. Lowrie's belief may have supported a finding by the trial court that Ivy voluntarily consented, it is not enough to override the trial court's discretion to decide otherwise. The evidence was in the zone of reasonable disagreement. *See Cortez*, 543 S.W.3d at 203.

The trial court's Conclusion of Law 18 states, "The State has the burden of proving voluntary consent by clear and convincing evidence. *Meekins v. State*, 340 S.W.3d 454, 460 (Tex. Crim. App. 2011). The State failed to meet that burden." Again, we construe this as a finding on a mixed question of law and fact, and on this record, we cannot say the trial court abused its discretion in so finding. The State never provided any testimony indicating Lt. Lowrie's conversation with Ivy went beyond mere acquiescence to Lt. Lowrie's authority. The record contains so little

14

information about the circumstances surrounding Ivy's provision of consent that we are not at liberty to disturb the trial court's finding that the State failed to meet its burden. *See Romero*, 800 S.W.2d at 543 ("If the trial court's findings of fact are supported by the record, an appellate court is not at liberty to disturb them.").

## Conclusion

Viewing the evidence in the light most favorable to the trial court's ruling, and giving the trial court's ruling almost total deference, we hold the trial court did not abuse its discretion by finding that the State failed to meet its burden to prove by clear and convincing evidence that Ivy voluntarily consented to the search. We overrule the State's sole issue and affirm the trial court's Order on Motion to Suppress Evidence.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on December 27, 2024
Opinion Delivered February 26, 2025
Do Not Publish

Before Golemon, C.J., Johnson and Chambers, JJ.